## Commonwealth vs. Dennis S. Chubbuck.

Suffolk.   October 7, 1981. — December 16, 1981.

Present: Hennessey, C.J., Wilkins, Abrams, & Nolan, JJ.

*Practice, Criminal,* Defendant's competence to stand trial, Mistrial, Verdict, Instructions to jury. *Homicide. Rape. Insanity.*

At the trial of indictments for serious crimes, preceded by a psychiatric determination that the defendant was competent to stand trial, no abuse of discretion appeared in the judge's denial of the defendant's motion during the trial for a further psychiatric examination to determine his competency or in the judge's failure, in light of the defendant's demeanor and behavior in the courtroom, to order an evidentiary hearing on the issue of his competency.  [749-752]

At the trial of indictments for murder in the first degree and for rape the judge did not abuse his discretion by denying a mistrial following testimony by the defendant's brother, at a point shortly after the defendant's removal from the courtroom for disruptive behavior, that the defendant had said he wanted to kill him.  [753-754]

A verdict slip furnished to the jury considering an indictment for murder in the first degree was in proper form and was correctly explained by the judge in his charge.  [754]

At the trial of indictments for murder and rape, the judge correctly instructed the jury that, if they found that the defendant committed the killing in carrying out the rape, they would be justified in finding the defendant guilty of murder in the first degree on the basis of felony-murder even absent any further proof of malice.  [754-756]

On an appeal from a conviction of murder in the first degree on the basis of extreme atrocity or cruelty the circumstances warranted neither a retrospective application of the principle of *Commonwealth v. Gould*, 380 Mass. 672 (1980), that a jury may consider a defendant's mental illness in determining the degree of murder on the question of extreme atrocity or cruelty, nor any relief under G. L. c. 278, § 33E.  [756-757]

Indictments found and returned in the Superior Court Department on January 26, 1979.

The cases were tried before *Simons,* J., and a motion for a new trial was heard by him.

*Wade M. Welch* for the defendant.

*William J. Doyle,* Assistant District Attorney (*Kevin Connelly,* Assistant District Attorney, with him) for the Commonwealth.

NOLAN, J. The defendant, Dennis Chubbuck, was convicted of rape and of murder in the first degree on the grounds of extreme atrocity and felony-murder. He was sentenced to concurrent life terms. He appeals from his convictions and from the denial of his motion for a new trial. Chubbuck argues error concerning (1) the failure of the trial judge to order further psychiatric examination or to hold a competency hearing following an outburst by the defendant during trial; (2) the failure of the judge to declare a mistrial because of a statement made by a witness during testimony; (3) the form of the verdict slip submitted to the jury; and (4) errors in the judge's charge concerning felony-murder and extreme atrocity or cruelty. The defendant also claims that we should exercise our power under G. L. c. 278, § 33E, and either reduce the verdict to a lesser degree of guilt or order a new trial. We affirm the convictions and conclude that there is no reason to exercise our powers under G. L. c. 278, § 33E.

We summarize the evidence presented at trial. The defendant and Denise Daly, the victim, first met in August of 1978. At that time Denise Daly was fifteen years old and the defendant was twenty. Prior to October 21, 1978, they had been seen together on a number of occasions. On at least one occasion they had gone with other teenagers to a wooded area behind the Altenheim, a nursing home in West Roxbury. This was a common gathering spot for area teenagers.

On Friday evening, October 20, 1978, the defendant and Denise Daly were seen together with a group of teenagers. On Saturday, October 21, 1978, the defendant and Denise Daly were seen together about 1:30 P.M. and again around 6 P.M. At approximately 6:30 P.M. that evening Denise Daly

telephoned a friend and stated that she and the defendant were going to the Altenheim. She asked the friend to meet them there but the friend declined. At approximately 7 P.M. that evening a resident of the Altenheim heard two voices (a male and a female) outside the Altenheim. The resident saw one person (the female) but did not see the other. The two were walking toward the woods in back of the nursing home.

At approximately 1 A.M. the next morning the defendant called his sister, Ann Leary, and told her that Denise Daly was missing. The defendant asked his sister to call Mrs. Daly to see if Denise was home. Mrs. Leary then telephoned Mrs. Daly. At about 2:30 A.M. the defendant again telephoned his sister and asked her whether Denise had returned home. His sister told him, "No." One-half hour later the defendant called his sister for the third time and told her that he was at the airport. The defendant also told his sister that he had a "problem" because Denise was "missing" and "naturally, they are going to come after me."

At approximately 1 P.M. on October 22, 1978, Denise Daly's body was discovered in the woods behind the Altenheim. The victim was naked from the waist down. The belt buckle of her slacks was broken off and the top clasp at the waistband of her slacks was missing. Her clothes were bloodstained. Two large rocks, one weighing ninety-five pounds and the other fifty-seven pounds, lay on the ground nearby. The rocks were bloodstained and a clump of human hair was discovered on the larger rock.

Dr. George Curtis, medical examiner for Suffolk County, conducted the autopsy. Dr. Curtis testified that the cause of death was multiple blows to the head, a crushed skull, lacerations of the brain and aspiration of blood. He concluded that these injuries were consistent with a blow resulting from a ninety-five pound rock being dropped on the victim's head while she lay, face up, on the ground. Dr. Curtis also found two lacerations on the lips of the victim consistent with being struck by a fist and injuries on the right side of the neck consistent with severe pressure being

applied by fingernails. Examination of the victim's vagina disclosed blood in the vagina and abrasions. The victim's hymen appeared to have been recently perforated and a vaginal smear indicated the presence of sperm.

Between October 21, 1978, and January 19, 1979, the defendant made numerous telephone calls to his sister Ann Leary, his brother Ralph Chubbuck, and a friend, each of whom testified at trial. These calls were made from various parts of the country. Mrs. Leary testified that during a telephone call on December 24, 1978, the defendant told her that he and the victim had been drinking on the day of October 21, 1978, and had gone to the woods behind the Altenheim. He further stated that the victim had agreed to have sex with him but after they had started, she began to scream. He picked up a five pound rock and started hitting her with it. He then picked up a huge rock and dropped it on her head. He then picked up another rock and did the same thing. On January 18, 1979, the defendant called his brother, Ralph Chubbuck, and told him a similar story. On January 19, 1979, the defendant again called his sister and again told her how he had killed Denise Daly. On January 19, 1979, the defendant was arrested by an FBI agent in Dallas, Texas.

1. The defendant's first contention is that the trial judge erred in refusing to grant a further psychiatric examination of the defendant or to conduct a hearing as to his competency before removing the defendant from the courtroom.

Some background information is necessary. Prior to trial, the judge acted on motions of the Commonwealth and the defendant and ordered a competency examination by Dr. Nicholas Rizzo, director of the Suffolk Superior Court Psychiatric Clinic. He further ordered the appointment of a psychiatrist, Dr. Leonard Friedman, to examine the defendant as to criminal responsibility and competency to stand trial. Dr. Rizzo and clinical social worker Gregory Tragellis examined the defendant and filed a competency report on April 11, 1979. In the report they concluded: "There is no evidence of any mental illness. The subject is

aware of charges against him, the criminal process, and his responses are coherent and appropriate. He is considered competent to stand trial." Dr. Leonard Friedman, a psychiatrist, also examined the defendant and filed his report on July 19, 1979. In it, he recited the defendant's history of drug abuse as well as his psychiatric and medical history and concluded that the defendant was competent to stand trial. He also concluded that the defendant "was probably not criminally insane at the time of the murder." On August 9, 1979, the judge allowed the defendant's motion for an electroencephalogram (EEG) but denied the defendant's motion for appointment of another psychiatrist. The first examination revealed an abnormal EEG. A second court-ordered examination resulted in a normal EEG. On September 13, 1979, the judge allowed the defendant's motion for a CAT scan and this scan result was normal. On September 13, 1979, and again on September 17, 1979, the defendant renewed his motion for the appointment of a second psychiatrist. The judge denied the motions.

The trial began on September 18, 1979. On the sixth day of trial, September 24, 1979, the Commonwealth called the defendant's brother, Ralph Chubbuck, to the stand. At this time the defendant stood up in the dock and gestured toward the witness, saying, "You ain't my . . . brother." A recess was called. Defense counsel met with the defendant and reported to the court that the defendant seemed to be "completely disoriented." Defense counsel moved for a competency examination of the defendant. The judge allowed Dr. Rizzo and Mr. Tragellis, who had previously filed a competency report on the defendant, to examine the defendant. Dr. Rizzo and Mr. Tragellis reported to the judge that the defendant was not able to cooperate and assist counsel at that time and recommended that twenty milligrams of Librium, a tranquilizing drug, be administered three times daily to aid the defendant in regaining his composure. The judge ordered that the medication be administered and recessed the trial for the day. The judge instructed the jury to disregard the defendant's actions. The next

morning Dr. Rizzo examined the defendant and reported that the defendant was competent to stand trial. The judge stated to defense counsel that any further outburst would result in the defendant's removal from the courtroom. The judge denied the defendant's motions for mistrial and for further psychiatric examination.

The trial resumed and Ralph Chubbuck was recalled to the stand. After a few questions, defense counsel approached the bench and informed the judge that the defendant had asked counsel to "[g]et me out of here." Counsel indicated that he felt the defendant was going to lose control again. The judge told counsel to advise the defendant that, if he could not control himself, the judge would put the defendant in another room with loudspeaker and telephone communication. The defendant, having been so advised, told counsel, "I don't care, get me out of here."

The judge called a recess and made arrangements to continue the trial in another courtroom with the defendant in loudspeaker and telephone communication. The judge instructed the jury to draw no inference from the defendant's absence. This means of communication continued into the next and final day of trial.

The defendant recognizes that the constitutional right of a defendant to be present at his trial can be forfeited provided he has been appropriately warned and continues his disruptive behavior despite such warning. *Illinois* v. *Allen*, 397 U.S. 337, 343 (1970). *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 307 (1975). The defendant contends, however, that his history of psychological problems and irrational and bizarre behavior, considered with the observations of Dr. Rizzo and defense counsel, raised substantial doubts concerning his competency to stand trial. Accordingly, the defendant submits that his rights were violated when the judge refused either to order further examination by a psychiatrist or to hold an evidentiary hearing and make a determination on the defendant's competency.

The test for determining the competency of an accused person to stand trial is "whether he has sufficient present

ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *Kostka*, 370 Mass. 516, 522 (1976), quoting from *Dusky* v. *United States*, 362 U.S. 402 (1960). When there is doubt as to whether the defendant satisfies this test, the judge must, on his own initiative, conduct a full hearing on the issue. *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). *Pate* v. *Robinson*, 383 U.S. 375, 385 (1966).

There was no error in the denial of the defendant's motion for a further psychiatric examination, nor was there error in the judge's failure to order an evidentiary hearing on the defendant's competency. These matters resided in the sound discretion of the judge and it has not been established that he abused that discretion. The defendant had been examined prior to trial by Dr. Rizzo and by Dr. Friedman. On both occasions he was found to be competent to stand trial. After the defendant's outburst in the courtroom, the judge recessed the trial and did not begin it again until Dr. Rizzo had examined the defendant and found him to be competent. The judge had the opportunity to observe firsthand the defendant's demeanor and behavior in the courtroom. He stated that less than a week before the defendant's outburst, he had been acting very rationally and actively assisting counsel in the jury selection process. The judge stated for the record that he viewed the defendant's outburst as disruptive and potentially dangerous to others in the courtroom but did not consider it to be bizarre or extremely irrational. It is also significant that defense counsel called no expert witnesses at trial to testify on the issue of the defendant's sanity. Additionally, the defendant had no history of mental illness or treatment in mental hospitals. Compare *Commonwealth* v. *Hill*, 375 Mass. 50, 58 (1978). For these reasons, we find that the judge did not abuse his discretion in denying the defendant's motion for further psychiatric examination or in failing to order an evidentiary hearing on the defendant's competency.

2. The defendant next argues that the judge incorrectly denied the defendant's motion for a mistrial after the defendant's brother testified that the defendant said he wanted to kill him. During the Commonwealth's examination of Ralph Chubbuck, the prosecutor elicited from the witness the contents of a telephone conversation with the defendant. The prosecutor then asked if the witness expected to hear from the defendant after this phone call. The witness replied that he did and the prosecution asked, "What did he say to you?" The witness replied, "He was going to — he said he wanted to kill me." The judge sustained defense counsel's objection and allowed the prosecutor's motion to strike this remark. The judge instructed the jury to disregard the remark.[1] Defense counsel then moved for a mistrial arguing that the prosecutor "knew or should have known" that this response was forthcoming. The prosecutor denied this. The judge denied the defendant's motion, offering to give any curative instruction that defense counsel might suggest. Defense counsel took the position that no instruction could cure the prejudice of the statement. The defendant argues that, because the defendant was removed from the courtroom moments before the jury heard this remark, the only conclusion that the jury could draw was that the defendant had been removed because of an ongoing threat to kill his brother. Accordingly, the defendant submits that a mistrial was required. By striking the testimony and promptly instructing the jury to disregard it, the judge did all that was necessary to cure any possible error from the admission of the statement. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 372-373 (1978). The judge was not required to declare a mistrial; such a determination is within the judge's discretion. *Commonwealth* v. *Early*,

---

[1] We are not suggesting that, if the witness's response had been permitted to stand without the judge's instruction to strike, it would have constituted reversible error. The jury might have considered the defendant's threat (if they believed he said it) as consciousness of guilt. Cf. *Commonwealth* v. *Goldenberg*, 315 Mass. 26, 33 (1943).

349 Mass. 636, 637 (1965). No showing of an abuse of discretion has been made. The prosecutor stated for the record that he did not expect to elicit this remark from the witness, and the judge accepted his representation. In view of this representation, the expunging of the remark, the prompt curative instructions that were given, and the judge's treatment of the matter in his final charge, we cannot say that the judge abused his discretion in failing to declare a mistrial.

3. The defendant next argues that the verdict slip, which the judge gave to the jury, foreclosed the jury's consideration of a verdict of murder in the second degree. We do not agree. The verdict slip contained three possible verdicts — not guilty, guilty of murder in the first degree (with three subheadings including deliberately premeditated malice aforethought, extreme atrocity or cruelty, and murder committed in the commission of rape) and guilty of murder in the second degree. There was no error in the submission of this verdict slip to the jury as it plainly included the possible verdict of murder in the second degree. The judge's charge clearly indicated to the jury that they were charged with finding the degree of murder. On four separate occasions he informed the jury that they were empowered to return a verdict of guilty of murder in the second degree. The judge also correctly informed them that it was their duty to return a verdict of guilty of the highest crime which had been proved beyond a reasonable doubt against the defendant. *Commonwealth* v. *Dickerson*, 372 Mass. 783, 797 (1977). There was no error in the verdict slip nor in the judge's charge explaining the verdict slip.

4. Finally, the defendant argues that there were errors in the judge's instructions on malice and extreme atrocity or cruelty. Defense counsel, however, did not object to the judge's charge and the defendant raises these issues for the first time on this appeal. Because of the failure to object at trial, the defendant is not entitled to appellate review as of right. *Commonwealth* v. *Fluker*, 377 Mass. 123, 130-131 (1979). The defendant urges us, however, to review these

issues under our power pursuant to G. L. c. 278, § 33E, claiming that there is a substantial risk of a miscarriage of justice. We now review the instructions.

The defendant's first objection to the judge's charge concerns the portion of the charge that discussed felony-murder. Specifically, the defendant contends that the judge's charge failed to convey to the jury that the Commonwealth was obliged to prove that the defendant possessed the intent to commit the underlying felony, i.e., the rape, in order to convict the defendant of felony-murder. We have read the judge's charge in its entirety and do not find merit in the defendant's contention.

The judge stated to the jury that in order to find the defendant guilty of rape the Commonwealth must prove beyond a reasonable doubt three things: "First, the act of sexual intercourse. Second, that the act was against the victim's will, accomplished by force or by threat of injury. And, third, that the victim did not consent to the act." In instructing the jury on felony-murder the judge stated: "Now when a felony murder is involved, it is immaterial the defendant did not intend to kill the victim or to cause her serious bodily harm. It is sufficient if the killing was committed in carrying out the felony. You will recall that I said malice is required for first and second degree and all types of murder in the first degree. But the element of malice in a felony murder case, that is, killing occurring during the commission of a rape, the element of malice is conclusively supplied by the commission of the felony. Sometimes it is said that in a felony murder the element of malice aforethought is implied, that is, it is supplied by the law itself. In a felony murder there is no requirement the murder must be committed with deliberately premeditated malice aforethought. It is, however, necessary that there be a relationship or a close cause and effect between the murder and the felony in order for the rule to apply, and what that ultimately means is that the defendant's acts in the commission of the felony, that is, the rape, had an important and substantial influence on his conduct that led to the death of

the victim. The issue is: Did the defendant commit the homicide? Was the homicide in the course of a rape or attempted rape? All of those elements must be proven to your satisfaction beyond a reasonable doubt."

We think that the instructions adequately conveyed to the jury the fact that the Commonwealth must prove that the defendant compelled the victim to submit by force or threat of bodily injury in order for the jury to convict the defendant of rape. The jury had more than sufficient evidence to find that the defendant compelled the victim to submit by force or threat of bodily injury. The judge correctly stated that once the jury found that the rape had been committed, if they then found that the killing was committed in carrying out the felony, they would be justified in finding the defendant guilty of. first degree felony-murder, even absent any further proof of malice. The element of malice aforethought necessary for a conviction of murder in the first degree is supplied by proof beyond a reasonable doubt of the element of malice essential to the underlying felony, in this case that the rape was committed by force or threat of bodily injury. *Commonwealth* v. *Watkins*, 375 Mass. 472, 487 (1978). *Commonwealth* v. *Gricus*, 317 Mass. 403, 412 (1944). There was no error in the instructions on rape or felony-murder.

The defendant next argues that the judge erred in his instructions to the jury on extreme atrocity or cruelty. Relying on our decision in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980), in which we held that the jury may consider a defendant's mental illness in determining the degree of murder, both on the question of premeditation and on matters of extreme atrocity or cruelty, the defendant urges that the judge should have given instructions consistent with *Gould*. The defendant acknowledges, however, that his trial preceded the *Gould* decision and further acknowledges that in *Commonwealth* v. *Shelley*, 381 Mass. 340, 354 (1980), we declined to apply the principles articulated in *Gould* to that case, which was tried before the date of the *Gould* decision, though we did not rule that the *Gould* deci-

sion would never be applied retrospectively. The defendant asks us to apply the *Gould* principles or to exercise our extraordinary powers under G. L. c. 278, § 33E.

The facts of the instant case warrant neither the exercise of this court's extraordinary powers under G. L. c. 278, § 33E, nor the application of the Gould doctrine. In *Gould*, the defendant had an extensive psychiatric history, including evidence of psychosis and a long-standing, constant delusional belief system. *Gould, supra* at 676. The defendant in the instant case has virtually no psychiatric history. The defendant did not present any evidence on the issue of his lack of criminal responsibility. In short, there is no reason for the principles we outlined in *Gould* to be applied to the defendant here.

We have considered each of the issues raised by the defendant on this appeal and find them to be without merit. We have also considered the entire case on the law and the evidence, pursuant to our powers under G. L. c. 278, § 33E, and we conclude that the verdict of guilt on the charge of murder in the first degree was neither against the law nor the evidence. The interests of justice do not require either a new trial or the entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*