COMMONWEALTH vs. ROBERT E. NICKERSON.

Norfolk.  September 14, 1982. — February 24, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Rape. Assault. Practice, Criminal,* Examination of jurors, Defendant's competence to stand trial. *Jury and Jurors.*

The judge in a criminal case did not abuse his discretion in refusing to ask the jurors, as requested by the defendant, whether they would tend to consider the testimony of a relative or close friend who is a police officer or is employed in the office of a district attorney as more believable than the testimony of a person convicted of a crime. [248-249]

There was no merit to a contention made by the defendant in a criminal case that the judge abused his discretion in refusing to question jurors as to their prior jury service, thereby foreclosing the defendant from challenging the array. [249]

The judge hearing a motion for a new trial in a criminal case was warranted in concluding that, although the defendant during the trial had been taking an antidepressant drug prescribed by a psychiatrist, he had not been incompetent to stand trial. [249-251]

Evidence at the trial of indictments charging murder in the first degree and assault with intent to commit rape was sufficient to permit a finding that when the defendant shot the victim he possessed the intent to rape her, even though the evidence of intent to rape was drawn from events occurring after the shooting, when the victim was probably dead. [251-254]

INDICTMENTS found and returned in the Superior Court Department on September 11, 1978.

The cases were tried before *Barton*, J., and a motion for a new trial was heard by him.

*John J. Barter* (*Andrew Good* with him) for the defendant.

*Peter M. McElroy*, Assistant District Attorney (*Charles J. Hely*, Assistant District Attorney, with him) for the Commonwealth.

NOLAN, J.  After trial to a jury, the defendant was con-
victed of murder in the first degree and assault with intent
to commit rape.  He appeals on three principal grounds.
First, he argues that the trial judge erroneously declined to
pose to prospective jurors a certain question requested by
the defendant.  Next, he argues that the trial judge erred in
denying his motion for a new trial based upon the defend-
ant's assertion that he was incompetent to stand trial.  Final-
ly, he argues that there was insufficient evidence on the
indictment for assault with intent to commit rape to war-
rant its submission to the jury.  We find no reversible error.

A brief recitation of the facts is appropriate here.  Those
facts pertinent to the issues raised will be set forth in detail
elsewhere in this opinion.  Carole Stephens was killed by a
gunshot while she was walking on Bridge Street, Wey-
mouth, on the night of September 2, 1978.  An eyewitness
testified at the trial that he saw a man walk up to the victim
and fire one shot into the victim's face at close range.  Medi-
cal evidence indicated that she probably died within a few
minutes.  The witness then observed the man dragging the
body into nearby shrubbery.  A Weymouth police officer,
responding to a call to the area, saw a man emerge from
shrubbery and run toward a wooded area.  The officer
momentarily lost sight of the man, but after a brief search
he found him lying on the ground.  The arresting officer ob-
served that the man was bloody and had many scratches on
his chest, back, and arms.  Shortly thereafter the man iden-
tified himself as Robert Nickerson.  Nickerson was informed
of his constitutional rights and was arrested.  Returning to
the area of the shrubbery at Bridge Street, the police officer
discovered the victim's virtually nude body.  The evidence
showed that the victim was shot in the left cheek by a .32
caliber pistol, the magazine of which later revealed the de-
fendant's fingerprint.  The police found the gun and the
magazine in the vicinity of the murder.  A .32 caliber bullet
was also found on the defendant's person, but the ballistics
expert was unable to identify it as coming from the maga-
zine found in the murder weapon.

1. *Questions to prospective jurors.* The defendant contends that the trial judge's refusal to pose a requested question to individual prospective jurors deprived him of his right to a fair trial and violated G. L. c. 234, § 28, the statute which governs voir dire examination of prospective jurors. The defendant contends that the trial judge abused his discretion in refusing to ask the following question requested by the defendant. "If you have a relative or close friend who is a police officer or works for a prosecutorial office in the Commonwealth, would you tend to believe the testimony of such person as more believable than that of a person who has been convicted of a crime?" The trial judge did ask the following three questions: (1) "Have you or has any member of your family been the victim of a violent crime?" (2) "Are you or is any relative of yours employed or serving as a police officer or other law enforcement officer of any town, city, state, or federal governmental agency?" (3) "Are you or is any relative employed in the office of the District Attorney of Norfolk County or any other prosecutorial agency of the Commonwealth?"

General Laws c. 234, § 28, provides the trial judge with a mechanism for the empanelment of an unbiased and impartial jury. The statute directs, upon motion of either party, that the trial judge shall examine a prospective juror for the purpose of uncovering (1) any interest the juror may have in the case, (2) any opinion he may already have formed about the case, (3) any relation between the prospective juror and any party to the case, and (4) any sensitivity to a bias or prejudice concerning the case. The judge did propound questions on these four subjects. The statute further provides that a prospective juror should be excused, if the trial judge finds that the juror does not stand indifferent in the case. If the trial judge finds that a prospective juror may not stand indifferent because of extraneous factors connected to the case, the judge must ask specific questions about the problem he perceives. *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982). Included among these extraneous factors are "community attitudes, possible exposure to

potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons." G. L. c. 234, § 28, as amended through St. 1975, c. 335. As a general rule the trial judge should decide in his discretion whether any extraneous influence appears in any juror. *Commonwealth* v. *Hobbs, supra.*

The particular question which the defendant urges borders on the preposterous. At trial, a juror may consider the record of conviction of crime of a witness on the issue of that witness's credibility, G. L. c. 233, § 21. A defendant is not entitled to be insulated from the impact of this statute. A prospective juror could have honestly responded by saying that he would tend to believe the testimony of a witness who was a relative or close friend or a witness who was connected to a police or to a prosecutorial office before believing a person convicted of crime. Such a response would not disqualify a person, nor is a defendant entitled to such information before exercising his peremptory challenge.

In addition, the defendant argues that the judge abused his discretion in refusing to question jurors as to their prior jury service, thereby foreclosing the defendant from challenging the array. See generally Mass. R. Crim. P. 20 (a), 378 Mass. 889 (1979) (array may be challenged by motion on ground that jurors were not drawn according to law). Based on the record here and on our decision in *Commonwealth* v. *Bastarache,* 382 Mass. 86 (1980), we hold that the trial judge did not abuse his discretion in this regard. See *Commonwealth* v. *Walker,* 379 Mass. 297, 300 (1979) (trial judge has broad discretion in determining the scope of voir dire); see also *Commonwealth* v. *Bastarache, supra* at 102-103 (unintentional defect in makeup of jury without evidence of prejudice to defendant is not ground for reversing conviction). Cf. *Commonwealth* v. *Soares,* 377 Mass. 461, 492, cert. denied, 444 U.S. 881 (1979).

2. *Defendant's competence to stand trial.* The defendant was convicted of murder in the first degree and assault with intent to commit rape on September 7, 1979. On January 28, 1981, the defendant filed a motion for a new trial,

alleging that during the trial he was under the influence of an antidepressant drug which rendered him incompetent to stand trial. The issue was never raised prior to this motion for a new trial. A hearing was held and the trial judge made findings of fact and issued an order denying the defendant's motion.

In 1804, this court held that where a defendant could not respond to an indictment due to mental incompetence the court must not try such a defendant. *Commonwealth* v. *Braley*, 1 Mass. 102, 103-104 (1804). The test to be applied in determining a defendant's competence to stand trial is "'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . . of the proceedings against him.'" *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 751-752 (1981), quoting *Dusky* v. *United States*, 362 U.S. 402 (1960) (per curiam). *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). When the judge has doubt "as to whether the defendant satisfies this test, the judge must, on his own initiative, conduct a full hearing on the issue." *Commonwealth* v. *Kostka*, 370 Mass. 516, 522 (1976). See *Commonwealth* v. *Hill*, 375 Mass. 50, 62 (1978).

There was no error in the denial of the defendant's motion for a new trial. The decision on this matter is one peculiarly well suited to the discretion of the trial judge. *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 752 (1981).

The judge made the following findings: A psychiatrist at Massachusetts Correctional Institution, (M.C.I.), Walpole prescribed a dosage of an antidepressant drug to be taken at the hour of sleep. During the period of the trial the defendant was taking this drug. Although the defendant communicated with his attorney frequently, he never indicated to him that he was taking any medication. The trial attorney testified that his client had a sufficient rational and factual understanding of the proceedings against him and had sufficient ability to consult with his attorney and to help in the trial preparation. The defendant never complained to any-

one, including the doctor at M.C.I., Walpole, about the drug. Defense counsel did not observe any unusual or unnatural conduct by the defendant during the trial, and the judge observed that the defendant was alert and responsive during the trial.

The findings of a trial judge in this regard should not be lightly disturbed. *Commonwealth* v. *Chubbuck,* 384 Mass. at 752. The facts in this case are not analogous to other cases in which this court and other courts have concluded that a defendant had not been competent to stand trial. See, e.g., *Commonwealth* v. *Hill,* 375 Mass. 50, 55 (1978) (defendant had long history of treatment in mental hospitals); *Drope* v. *Missouri,* 420 U.S. 162, 164 n.1, 166-181 (1975) (history of mental aberration and suicide attempt during trial); *Pate* v. *Robinson,* 383 U.S. 375, 385-386 (1966) (long history of "pronounced irrational behavior"); *Hansford* v. *United States,* 365 F.2d 920, 921-922 (D.C. Cir. 1966) (withdrawal from narcotics addiction); *Pouncey* v. *United States,* 349 F.2d 699, 700, 701 (D.C. Cir. 1965) (remanded for competency hearing as result of irrational behavior in courtroom). We find no error.

3. *Denial of motion for directed verdict.* At the close of the Commonwealth's case the defendant moved for a directed verdict on both the indictments for murder in the first degree and the assault with intent to commit rape.[1] Only the latter motion was argued. The defendant contends that the evidence on the issue of assault with the intent to commit rape was insufficient as a matter of law to submit to the jury. We do not agree.

We have said that a motion for a directed verdict should be denied "if all the circumstances including inferences [that are not too remote according to the usual course of events] are of sufficient force to bring minds of ordinary

---

[1] Under the current Massachusetts Rules of Criminal Procedure this would be called a motion for required finding of not guilty. Mass. R. Crim. P. 25, 378 Mass. 896 (1979).

intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 676 (1979). Accord *Commonwealth* v. *Amado,* 387 Mass. 179, 186 (1982); *Commonwealth* v. *Vitello,* 376 Mass. 426, 460-461 (1978); *Commonwealth* v. *Cavedon,* 301 Mass. 307, 314 (1938). On such a motion the evidence should be viewed, both here and by the trial judge, in the light most favorable to the Commonwealth. *Commonwealth* v. *Basch,* 386 Mass. 620, 622 (1982). *Commonwealth* v. *Toney,* 385 Mass. 575, 582 (1982).

Two eyewitnesses testified that the victim was walking on Bridge Street, Weymouth, shortly before midnight on September 2, 1978. One eyewitness saw the defendant appear at the entrance to the Edgar Edison plant; the defendant approached the victim and shot her in the face when he was a few feet away. The victim immediately dropped to her knees. There is no evidence of any prior contact between the victim and the defendant. Medical evidence indicated that the victim probably lost the ability to breathe at the moment the bullet entered through her cheek and damaged her spinal cord, causing immediate paralysis. She probably died within several minutes. Further evidence indicated that the defendant dragged the body into some shrubbery. The victim's body was discovered soon thereafter. Her clothing was in disarray about her neck, shoulders, and hips, exposing her virtually naked body. Her dress and her brassiere were pulled up to her neck. Her half-slip was pulled up around her waist. Because of the medical evidence of immediate paralysis, the jury could have inferred reasonably that her legs were repositioned by the defendant. There was no evidence of seminal fluid either on the defendant's clothing, the victim's clothing, or the victim's body. However, there was blood on the defendant's underpants.[2] Finally, the defendant's belt was unfastened when he was apprehended. The victim's purse was not taken.

---

[2] Testimony given by two experts established the blood on the defendant's clothing to be human blood, type O. A blood grouping test of the

The defendant was not charged with rape but assault with intent to rape. The evidence which we set forth above is sufficient for a jury of ordinary intelligence to be convinced beyond a reasonable doubt that the defendant possessed the intent to rape the victim at the time that he shot her. *Commonwealth* v. *Shaw*, 134 Mass. 221, 221-222 (1883) (that defendant failed in attempt to rape is no defense to indictment charging assault with intent to abuse carnally). See *Commonwealth* v. *Tarver*, 369 Mass. 302, 315 (1975); *People* v. *Goodridge*, 70 Cal. 2d 824, 838 (1969) (felony-murder could be found when, failing to accomplish rape while victim was alive, defendant killed victim to satisfy desires with her corpse); *People* v. *Quicke*, 61 Cal. 2d 155, 158-159 (1964) (finding of specific intent to rape necessary to support conviction under felony-murder may be based on inference from evidence of deliberate plan to coerce victim into sexual intercourse, or "if that failed, to kill her to satisfy his desires with her corpse"). We need not consider, therefore, whether there was an attempt to rape a dead body. See generally *United States* v. *Thomas*, 13 C.M.A. 278, 295 (1962) (Ferguson, J., concurring in part, dissenting in part) (rape cannot be committed upon body of dead person); *People* v. *Stanworth*, 11 Cal. 3d 588, 604-605 n.15 (1974) (victim must be alive at moment of penetration to support a conviction of rape); *Commonwealth* v. *Sudler*, 496 Pa. 295, 302-304 (1981) (penetration after victim's death does not constitute rape).

We note also that the trial judge carefully instructed the jury that, for the jury to find the defendant guilty of assault with intent to rape, they must be satisfied beyond a reasonable doubt that the prosecution proved both (1) an assault upon the victim, and (2) a specific intent by the defendant at the time of the assault to rape the victim. He conscientiously instructed the jury that a specific intent is "a con-

victim's blood established her blood to be type O. One of the experts, however, acknowledged that he had no way of determining whether the blood on the defendant's undershorts at the crotch area had soaked through.

scious act with the determination of the mind to do an act. It is contemplation rather than reflection and it must precede the act."

The evidence, viewed in the light most favorable to the Commonwealth, is sufficient to warrant the jury in finding that the defendant assaulted the victim with the intent to rape her, though it is a close case.[3]

4. *Review pursuant to G. L. c. 278, § 33E.* We have reviewed the entire record pursuant to the mandate of G. L. c. 278, § 33E, and we see no reason to disturb the verdict of guilty of murder in the first degree.

5. *Conclusion.* In conclusion, we affirm the judgments of conviction of murder in the first degree and of assault with intent to commit rape.[4]

*So ordered.*

---

[3] We note that the judge did not charge the jury on the felony-murder rule. He charged the jury on the law of murder in the first degree by reason of deliberate premeditation with malice aforethought and of murder in the second degree.

[4] The defendant was given concurrent sentences.