COMMONWEALTH *vs.* VIKTOR ZEMTSOV
(and seven companion cases[1]).

Hampden. November 1, 2004. - December 15, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Assault with Intent to Rape. Assault and Battery. Indecent Assault and Battery. Practice, Criminal,* Trial of indictments together, Trial of defendants together.

At the trial of indictments charging two defendants with assault with intent to rape, assault and battery, and indecent assault and battery on a person over the age of fourteen years, the evidence was sufficient to permit the jury to infer that one defendant sought to facilitate a rape by the other, thus sharing that second defendant's intent to rape [39-41]; moreover, the evidence was sufficient to convict the second defendant of assault with intent to rape and assault and battery in an incident involving a different victim, both as a joint venturer on the assault and battery charge and as a principal on the assault with intent to rape charge [41-42].

The joint trial of two defendants on charges of assault with intent to rape, assault and battery, and indecent assault and battery on a person over the age of fourteen years gave rise to no error, where the indictments alleged that the two defendants beat and sexually assaulted the victim. [42-43]

No error arose from the joinder of the trial of indictments charging one codefendant with assault with intent to rape, assault and battery, and indecent assault and battery on a person over the age of fourteen years with the trial of indictments charging that same codefendant with assault with intent to rape and assault and battery in an incident involving a different victim (indictments that did not involve the other codefendant), where the acts were sufficiently connected, and the evidence of assault in each case was admissible in the other to show one codefendant's intent to rape the victims; moreover, that codefendant failed to satisfy his heavy burden of demonstrating that the joinder created prejudice so compelling that it prevented him from obtaining a fair trial. [43-45]

No error arose from the joinder of the trial of indictments charging two defendants with assault with intent to rape, assault and battery, and indecent assault and battery on a person over the age of fourteen years with the trial of indictments charging one of the defendants with assault with intent to rape and assault and battery in an incident involving a different victim, where the evidence of each incident was presented separately; where, throughout the trial, the judge carefully instructed the jurors to consider each incident separately, and gave repeated and pointed instructions limit-

---

[1]Four more against Viktor Zemtsov and three against Viktor Saykin.

ing the jury's consideration of the latter incident to the codefendant involved; and where, had the incidents been tried separately, the evidence from the incident involving one defendant would have been admissible in the trial of the incident involving both defendants to prove that defendant's intent to rape. [45-46]

INDICTMENTS found and returned in the Superior Court Department on February 7, 2002, and March 6, 2002.

The cases were tried before *Bertha D. Josephson*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter M. Onek*, Committee for Public Counsel Services, for Viktor Saykin.

*Sandra P. Wysocki Capplis* for Viktor Zemtsov.

*Jane Davidson Montori*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. After a joint trial, a Superior Court jury convicted the defendants, Viktor Zemtsov and Viktor Saykin, of assault with intent to rape, assault and battery, and indecent assault and battery on a person over the age of fourteen years. The jury also convicted Zemtsov of assault with intent to rape and assault and battery involving a different victim. Represented by separate counsel, each defendant argues on appeal that the judge erred in denying their respective motions for required findings of not guilty, and that it was error for them to be tried jointly. We granted an application for direct appellate review to determine whether the judge erred in denying the defendants' motions for required findings and in refusing to sever the trials. Because we conclude that the judge properly denied the defendants' motions for required findings and that the cases were properly joined, we affirm the defendants' convictions.

*Facts.*

1. *The attack against Ann[2] by both defendants.* On the evening of December 17, 2001, Ann used heroin and then went to Santi's, a Springfield restaurant, where she drank beer. She encountered the defendants in the restaurant. Speaking with Russian accents, the defendants asked if she wanted to go for a

---

[2]A pseudonym.

ride, and she agreed. They walked to a nearby parking lot and entered a four-door, dark blue car. Zemtsov took the driver's seat, Saykin took the front passenger seat, and Ann got in the back seat behind Saykin and next to a child's car seat. As they began to drive, Ann changed her mind and wanted to get out of the car. The back doors were locked and Ann could not open them. When Ann announced that she wanted to get out of the car, Saykin turned around and slapped her in the face.

As they drove to Bondi's Island, a secluded area in Springfield, the defendants spoke to each other in Russian, which Ann did not understand. At some point, Saykin jumped into the back seat and began to beat Ann, punching and strangling her and pulling her hair. Saykin pulled down his pants, grabbed Ann's hair, and rubbed her face against his exposed genitals, then pushed her back and continued to hit and strangle her. Zemtsov joined Saykin in the back seat and also hit Ann. During this attack, someone tried to remove Ann's belt. Ann hit Saykin in his exposed testicles and struck at Zemtsov. She somehow managed to open the car door, threw herself out, and ran to a nearby wastewater treatment plant. A security guard found Ann and took her to the night manager, who contacted the police. Ann was bleeding from the face and had black eyes (one was swollen shut); her lips were bleeding, and blood dripped from her hair. Her shirt was twisted and lifted above her jeans, and she was crying. Ann provided the police with a description of her attackers and the car, and later identified the defendants as her attackers.

After the police apprehended the defendants and transported them to the police barracks, the defendants removed their clothes. Saykin was not wearing underwear. On the front portion of Zemtsov's underwear there was a large amount of fresh blood, and an eight-inch strand of black hair. There was dried blood and several long, black hair strands on Zemtsov's genital area and dried blood along the top of his inner thigh. Although the blood and hair were not tested, a reasonable inference, which was not disputed by the defendants, is that the hair and blood belonged to the victim. A search of the defendants' car resulted in the discovery of Ann's jacket, hair clip, and earring.

2. *The attack against Linda[3] by Zemtsov.* Following the defendants' arrests in the case involving Ann, an article concerning the crime appeared in a newspaper. Linda recognized an accompanying photograph of Zemtsov as a man involved in an earlier attack on her at Bondi's Island. She contacted police, and thereafter picked Zemtsov's picture from a photographic array.

At trial Linda testified that, sometime in October, while she "hung out" near Santi's on Main Street, Linda met three Russian men, including Zemtsov, in a dark blue Nissan automobile. Seeking to obtain money to purchase drugs, Linda went with the men to a parking lot and performed oral sex on Zemtsov for twenty dollars. A couple of weeks later, Linda saw Zemtsov and another man in a parking lot. Although initially rebuffing their overtures, she eventually agreed to a private meeting. In her truck, Linda led them to Bondi's Island. She got out of the truck and walked to a secluded spot in the woods, accompanied by only one of the men, not Zemtsov. She performed oral sex on this man in exchange for twenty dollars, after which she instructed him to send over Zemtsov, who was waiting in the car. She then performed oral sex on Zemtsov.

Zemtsov stated that he would not pay and ordered Linda to take off her clothes and get on the ground. She said no, that she was done, wanted the money, and was leaving. The other man then came from behind her and grabbed her by the neck. The men spoke to each other in Russian. Zemtsov was attempting to pull up his pants, which were at his knees, when Linda kicked or "kneed" him in the testicles. Zemtsov fell to the ground and started yelling in Russian. The other man had hold of her jacket and shirt, out of which she managed to "squiggle," leaving only her bra. Screaming "police," she ran to her truck, the other man pursuing. Zemtsov was also pursuing her, but at a slower pace than the other man. She got into the truck and as she drove off, she saw both men standing together.

*Discussion.*

1. *Sufficiency of the evidence.* Both defendants argue that the judge erroneously denied their motions for required findings of

---

[3]A pseudonym.

not guilty. In reviewing these claims, we must determine whether the Commonwealth introduced sufficient evidence to permit a rational trier of fact to infer that Zemtsov assaulted both of the women and Saykin assaulted Ann and that they did so with the intent to rape them. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979) (standard of review is whether evidence introduced at trial, considered in light most favorable to Commonwealth, is sufficient to permit rational trier of fact to infer existence of essential elements of crimes charged beyond reasonable doubt). For the reasons set forth below, we conclude that the motions were properly denied.

a. *Saykin.* Saykin argues that the judge erred in denying his motion for a required finding of not guilty on the charge of assault with intent to rape because the jury convicted him as a joint venturer and there was insufficient evidence that he shared Zemtsov's specific intent to rape Ann. We disagree and conclude that there was sufficient evidence from which the jury could infer that Saykin sought to facilitate a rape by Zemtsov, thus sharing his intent to rape.

Ann bled profusely from her face as a result of being repeatedly hit by both defendants. A large amount of blood and a long strand of black hair were found in Zemtsov's underwear. Additionally, more blood was observed in his groin area and on the top of his inner thigh. Ann testified that Saykin dropped his pants and grabbed her head and rubbed her face against his exposed penis. However, the physical evidence warranted the jury to reasonably infer that Ann's face had forcibly been in contact with Zemtsov's crotch as well. Moreover, the jury could infer from the lack of blood on Zemtsov's pants, and from the presence of blood and hair found on his underwear and skin, that Zemtsov in Saykin's presence and with Saykin's attempting to shatter Ann's resistance by beating her, had removed his pants, but not his underwear.

Contrary to Saykin's argument that there is nothing to suggest that his conduct was intended to be a prelude to a rape, the evidence is sufficient to establish intent to rape. See, e.g., *Commonwealth* v. *Nickerson*, 388 Mass. 246, 252-253 (1983); *Commonwealth* v. *Brusgulis*, 41 Mass. App. Ct. 386, 387-388 (1996); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 752-753

(1986). These cases explain that intent to rape may be inferred from various facts viewed in context of the circumstances, including a struggle between the assailant and the victim, the grabbing or tearing of garments, the absence of any other motive for the defendant's actions, the assailant's acts of placing the victim in a compromising position, and the location of the assault being a secluded area. See *Howell* v. *State*, 659 So. 2d 132, 133 (Ala. Crim. App. 1994) (finding intent to rape where defendant sat on victim's shoulder, unzipped his pants, and pulled out his penis, putting it in front of victim's face).

Moreover, there was evidence that, at some point, either Zemtsov or Saykin tried to remove Ann's belt. From that evidence, the jury reasonably could have inferred that while Saykin continued to beat Ann to suppress her resistance, Zemtsov pulled off his pants and tried to remove Ann's belt. Accordingly, the judge correctly denied Saykin's motion for a required finding of not guilty.

b. *Zemtsov*. Regarding the assault on Linda, Zemtsov argues that the judge erred in denying his motion for required findings of not guilty of assault and battery and assault with intent to rape because there was insufficient evidence that he intended to rape Linda or that he knew of, and was willing to participate in, the assault and battery.

To convict Zemtsov as a joint venturer on the assault and battery charge, the Commonwealth had to establish that he was present with knowledge that another intended to commit an assault and battery, and by agreement was willing and available to help the other person. *Commonwealth* v. *Miranda*, 441 Mass. 783, 791 (2004), and cases cited. Zemtsov argues that the Commonwealth's evidence only placed him at the scene of the crime and, thus, was insufficient. This argument is without merit.

The jury were warranted in believing Linda's testimony that immediately after Zemtsov ordered Linda to take off her clothes and lie down on the ground, the other man grabbed her neck from behind. During that touching, the other man and Zemtsov spoke to each other in Russian. Additionally, when Linda ran, both men followed her. The fact that Zemtsov did not run as fast as the other man does not require a conclusion to be drawn that he lacked resolve. Rather, the evidence demonstrates that

he was disabled by Linda's kick to his testicles. Moreover, both men were standing together as Linda drove away. Accordingly, there was sufficient evidence to support the inference that Zemtsov and the other man consciously acted together in the assault and battery, and the judge properly denied Zemtsov's motion for a required finding on that charge. See *Commonwealth v. Sexton*, 425 Mass. 146, 152 (1997).

To convict Zemtsov of assault with intent to rape as a principal, in addition to proving that he assaulted the victim, the Commonwealth was required to prove that he specifically intended to rape the victim. *Commonwealth* v. *Nickerson, supra* at 252-253. Zemtsov argues that the Commonwealth's evidence, comprised solely of Linda's testimony that he said the word "down" and was present when the other man grabbed her neck, indicated that Zemtsov was "unable to assist the other man" and negated "any inference that Zemtsov intended to rape" Linda. However, Zemtsov overlooks the entirety of evidence introduced at trial. That evidence and reasonable inferences from it were sufficient to establish Zemtsov's intent to rape. The evidence presented showed that Zemtsov, with his pants down, stood before Linda after she had given him oral sex, and ordered her to remove all of her clothes and to lie down on the ground. From this, the jury could infer his intent to have intercourse with her. Additionally, as Linda had just told him that she was done and was leaving, and was angry that he would not pay her for the oral sex, the jury could infer that she did not consent to any other sexual act with Zemtsov. Therefore, the judge properly denied the defendant's motion for a required finding of not guilty on this charge.

2. *Joinder.* The defendants appeal from the denial of their respective pretrial motions to sever. Both defendants argue that the indictments against Zemtsov alone should have been severed and tried separately from those indictments against both defendants concerning the sexual assault of Ann. Zemtsov also argues that he should not have been tried jointly with Saykin on the charges stemming from the sexual assault against Ann.

Rule 9 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), governs joinder of offenses and joinder of defendants. Joinder requires that the offenses be related and

that it be in the best interests of justice. *Commonwealth* v. *Sullivan*, 436 Mass. 799, 803 (2002). "Absent a constitutional requirement, whether the indictments joined for trial should be severed is a matter within the sound discretion of the judge [and his] decision will be reversed only if there has been a clear abuse of discretion." *Commonwealth* v. *Allison*, 434 Mass. 670, 679 (2001), citing Mass. R. Crim. P. 9 (a) (3), (d) (2). "The defendant bears the burden of demonstrating that prejudice will result from a failure to sever the charges." *Commonwealth* v. *Delaney*, 425 Mass. 587, 593-594 (1997), cert. denied, 522 U.S. 1058 (1998), citing *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981).

a. *Offenses against Ann.* There is no merit to Zemtsov's argument that the factual scenario of the case did not permit both defendants to be tried together for their alleged crimes against Ann. Rule 9 (b) governs joinder of defendants and provides, in relevant part: "Two or more defendants may be joined in the same indictment or complaint if the charges against them arise out of the same criminal conduct or episode . . . ." Here, it was alleged that, together, the defendants got into the car with Ann and, once inside, they beat and sexually assaulted her. As such, rule 9 (b) applies and there was no abuse of discretion in joining the cases against the defendants regarding the offenses against Ann.

b. *Offenses against Linda.* Both defendants argue that the joinder of offenses against Linda was not only improper joinder, but also was prejudicial because the offenses involving Ann were unrelated to those involving Linda.

(1) *Joinder of offenses.*[4] Rule 9 defines related offenses as those "aris[ing] out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass. R. Crim. P. 9 (a) (1). Offenses

---

[4]Rule 9 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), governs the joinder of offenses and provides, in pertinent part:

"(1) *Related Offenses.* Two or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected

are related if the evidence in its totality shows a common scheme and pattern of operation that tends to prove all indictments. *Commonwealth* v. *Feijoo*, 419 Mass. 486, 494-495 (1995). "Time and space play an important role in determining whether offenses are related . . . for the purposes of joinder." *Commonwealth* v. *Delaney, supra* at 594. Moreover, "[s]eparate trials are not required merely because offenses occurred on different dates or involved different victims" (citation omitted). *Commonwealth* v. *Auguste,* 414 Mass. 51, 60 (1992).

Zemtsov argues that the joinder of offenses was improper, maintaining that at a trial of only those charges involving Ann, evidence of the offenses against Linda would not be admissible on the issues of modus operandi and intent because the victims were different, the attacks occurred on separate dates, and the crimes were not sufficiently similar. Although Zemtsov concedes that evidence of other crimes is admissible to establish intent and other facts relevant to proof of the crime charged, he argues that modus operandi and intent is difficult to establish by prior bad acts committed more than hours or days before the charged offense. We disagree. The facts of this case demonstrate that Zemtsov's participation in the two criminal incidents, despite slight factual variations, are sufficiently connected to support the judge's decision to deny his motion to sever the trials. See *Commonwealth* v. *Wilson,* 427 Mass. 336, 345 (1998). In each incident, Zemtsov and another man who spoke Russian met and "picked up" the victim at or outside of Santi's. In each incident, Zemtsov and another Russian-speaking man used the same dark blue car. The incidents occurred at the same secluded location, Bondi's Island, and in fairly close temporal proximity: no more than one and one-half months separated the incidents. Contrary to Zemtsov's argument, we agree with the judge that the acts were sufficiently similar, and we conclude that the evidence of assault in each case was admissible in the other to show Zemt-

together or constituting parts of a single scheme or plan.

"   . . .

"(3) *Joinder of Related Offenses for Trial.* If a defendant is charged with two or more related offenses, either party may move for joinder of such charges. The trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice."

sov's intent to rape the victims, an element of the crime charged. Because we conclude the offenses were properly joined, there was no abuse of discretion.

Where offenses have been properly joined under rule 9 (a), the defendant has the burden of showing that he nevertheless was prejudiced by the joinder, and that severance should have been granted under rule 9 (d). *Commonwealth* v. *Sullivan, supra* at 805. The question whether failure to sever offenses joined for trial resulted in undue prejudice to a defendant turns largely on whether evidence of the other offenses would have been admissible at a separate trial on each indictment. *Commonwealth* v. *Wilson, supra* at 346. As discussed above, the incidents were sufficiently related and the evidence would be admissible at both trials. Moreover, the defendant addressed only the propriety of the joinder and failed to assert how he was prejudiced. Therefore, he has failed to satisfy his heavy burden of demonstrating prejudice from the joinder that was so compelling as to have prevented him from obtaining a fair trial. See *Commonwealth* v. *Delaney, supra* at 595, and cases cited.

(2) *Joinder of defendants.* As noted above, rule 9 (b) governs joinder of defendants and provides, in relevant part:

> "Two or more defendants may be joined in the same indictment or complaint if the charges against them arise out of the same criminal conduct or episode or out of a course of criminal conduct or series of criminal episodes so connected as to constitute parts of a single scheme, plan, conspiracy or joint enterprise [but] all of the defendants need not be charged in each count."

Because he was not involved in the attack against Linda, Saykin argues that the judge erred in denying his motion to sever the additional indictments against Zemtsov from his trial because the factual scenario did not fall within the parameters for rule 9 (b) and that he was prejudiced by the joinder. Specifically, Saykin claims that he was prejudiced by evidence pertaining to the attack against Linda because of the potential taint of guilt by association. We disagree and conclude that this scenario falls within rule 9 (b). Moreover, the evidence of each incident was presented separately, and throughout the trial the judge carefully instructed the jurors to consider each incident separately. See

*Commonwealth* v. *Wilson, supra* at 347 ("no indication in the record that this instruction was inadequate to offset any possible prejudice from the joinder, or that the jury inappropriately applied evidence of one indictment toward another"). Additionally, the judge gave repeated and pointed instructions limiting the jury's consideration of the incident involving Linda to Zemtsov. Indeed, the prosecutor reiterated this point in his closing argument. "It is highly unlikely that the jury [were] confused about the charges, the codefendant[], or the evidence applicable to each of them." *Commonwealth* v. *Weaver*, 400 Mass. 612, 618 (1987). Furthermore, the "jury are presumed to follow the instructions of the judge." *Commonwealth* v. *Degro*, 432 Mass. 319, 328 (2000), citing *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997).

In addition, because the Commonwealth proceeded against Saykin on the assault with intent to rape charge on a joint venture theory, it was necessary to prove that he shared the principal's intent. In order to do this, the Commonwealth had to prove Zemtsov's intent to rape. Thus, had the Linda incident been tried separately from the Ann incident, the testimony regarding the prior assault on Linda would have been admissible in the trial of the assault on Ann to prove Zemtsov's intent to rape. Accordingly, we conclude that there was proper joinder and that Saykin was not prejudiced.

*Conclusion.*

For the reasons stated above, we affirm the defendants' convictions.

*Judgments affirmed.*