## COMMONWEALTH *vs.* JOHN A. BURKE.

Middlesex. September 13, 1978. — November 2, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Homicide. Evidence*, Photograph; Opinion: expert; Hypothetical question. *Practice, Criminal,* Instructions to jury. *Witness,* Expert: opinion, qualification.

The judge at a murder trial did not abuse his discretion in admitting in evidence photographs of the deceased victims. [540]

The judge at a murder trial did not abuse his discretion in permitting the medical examiner to give his opinion, based in part on a color photograph, that the gun which killed one of the victims was fired at very close range. [540–541]

It was within the judge's discretion at a murder trial to permit a psychiatrist, offered by the Commonwealth as a rebuttal witness, to answer a hypothetical question as part of the basis for his opinion concerning the defendant's mental competence. [541]

The judge at a murder trial did not err in refusing to give a manslaughter instruction where no view of the evidence would have permitted a finding of manslaughter. [542–543]

In the context of the entire charge to the jury at a murder trial, the defendant was not prejudiced by a portion of the charge referring to the defendant's appellate rights. [543–544]

INDICTMENTS found and returned in the Superior Court on September 15, 1976.

The cases were tried before *Hallisey*, J.

*Robert A. Stanziani* for the defendant.

*Susan C. Mormino*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant shot five people in a home in Cambridge in the early morning of September 5, 1976. Two of these people died. The defendant was convicted of murder in the first degree of one victim; murder in the second degree of another; and armed assault with intent to murder and assault and battery by means of a dangerous weapon as to the three surviving victims. The defendant did not deny that he shot the victims but claimed that he was not criminally responsible for his conduct under the standards set forth in *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967). We affirm the judgments and, pursuant to the exercise of our responsibilities under G. L. c. 278, § 33E, we find no occasion to change the jury's verdicts on the murder indictments.

1. There was no error in the judge's rulings on three separate evidentiary questions.

The admission of photographs of the deceased victims was within the judge's discretion. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 84 (1978). He carefully considered six photographs offered by the Commonwealth, and directed that a portion of one be cut out.

The judge did not abuse his discretion in permitting the medical examiner to give his opinion, based in part on a color photograph, that the gun which killed one victim was fired at very close range. See *Commonwealth* v. *Medina*, 372 Mass. 772, 780-781 (1977), and cases cited. Earlier, when the judge was considering with counsel the admissibility of the photographs, he inquired whether "[t]he doctor would say that that black mark would show the barrel was very close to her head." The prosecutor said he would. Immediately after the conference, the medical examiner was called to testify, and the defendant agreed to

the witness's qualifications. The photographs were then admitted in evidence. If the defendant had a specific objection to the qualifications of the medical examiner to give an opinion concerning the proximity of the gun to the victim, he should have expressed it. His concession of the doctor's qualifications, knowing that the doctor was going to be asked how close the gun was to a victim's head when the bullet was fired, makes the general objection to such a question ineffective to raise the issue of the doctor's qualifications. In any event, the doctor testified, on cross-examination, that he was quite familiar with "ballistician work." See *Commonwealth* v. *Seit*, 373 Mass. 83, 91 (1977). Moreover, even if the admission of that opinion had been error, it was not prejudicial in this case where the central dispute was the defendant's criminal responsibility.

It was within the judge's discretion to permit a psychiatrist, offered by the Commonwealth as a rebuttal witness, to answer a hypothetical question as part of the basis for his opinion concerning the defendant's mental competence at the time of the shootings. The defendant argues that certain important facts were omitted from that hypothetical question. The defendant might have pointed out the absence of these facts from the hypothetical question at the time of his objection, but he did not. The omitted facts could have been presented to the witness in a hypothetical question asked in cross-examination (*LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 232 [1963]), but they were not. Of course, the omission of certain facts may affect the weight of a witness's testimony. See *M. DeMatteo Constr. Co.* v. *Daggett*, 341 Mass. 252, 261 (1960). We have granted wide discretion to trial judges in dealing with hypothetical questions. *Id.* We do not regard the omission of particular facts from the hypothetical question to be of sufficient significance to justify reversing the judge's ruling, especially where no specific omission was brought to the judge's attention. See *Le Blanc* v. *Ford Motor Co., supra.*

2. The defendant argues that the judge should have given an instruction which would have permitted the jury to return a verdict of guilty of manslaughter on the ground of sufficient provocation by one of the victims. We disagree.

We acknowledge that a judge should give a manslaughter instruction where, after resolving all reasonable inferences in the defendant's favor, any view of the evidence would permit a finding of manslaughter. *Commonwealth* v. *LeBlanc*, 373 Mass. 478, 491 (1977). In this case, however, the evidence would not have supported a finding that the defendant acted "from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice." *Commonwealth* v. *Zukoski*, 370 Mass. 23, 28 (1976), and cases cited, quoting from *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). Nor was there evidence which would have warranted a finding of involuntary manslaughter.

The undisputed evidence showed that the defendant had been seeing the deceased female victim socially. Their relationship had been deteriorating, as the defendant knew. On the night of the shootings, the defendant, carrying a gun, came to her residence. She was not home, but her son let him in. Later, she returned home with three other people. She went into the kitchen alone, and the defendant followed. The evidence of their conversation is not complete, but it appears that he told her he loved her and asked her something. She responded with words of rejection and swore at him.[1] He then shot her

---

[1] The evidence concerning the conversation in the kitchen is as follows: This victim's son testified that he heard the defendant say, "Do you love me? Goddamn it, I love you." He next heard a gunshot. Another surviving victim testified that the defendant said, "I said hello to you. Goddamn it. Now, why don't you say hello to me? You know how much I love you." She heard the first victim speaking softly but did not hear what she said. The third surviving victim heard an argument in the kitchen with voices raised in anger, but did not get the gist of the argument. The defendant did not testify.

A police officer took a statement from the defendant in which the

fatally and, in succession, shot her son and the three people who had come home with her.[2]

In *Commonwealth* v. *Bermudez*, 370 Mass. 438, 441-442 (1976), we acknowledged that sufficient provocation might be found in the disclosure of a fact by an oral statement, rather than from personal observations, and we left "open the possibility that, in an appropriate case, testing the defendant's response on an objective standard, sufficient provocation may be found in information conveyed to a defendant by words alone." In the *Bermudez* opinion, we concluded that a wife's using of obscenities and telling her husband "I don't need you around here, I have got another man" would not warrant a finding of sufficient provocation. *Id.* at 440. On an objective standard, the words used by the deceased victim in this case were less of a ground for provocation than those words held to be inadequate provocation in the *Bermudez* case.

3. The defendant argues that the judge committed prejudicial error in his charge to the jury by referring to the defendant's appellate rights, thereby reducing the

defendant said that he asked the first victim if she loved him and said that he loved her. She responded, "Be quiet. The kids are upstairs." She then swore at him.

Each of two psychiatric experts testified as to what the defendant told him concerning the conversation in the kitchen. A psychiatrist, called by the defendant, testified that the defendant told him that he went into the kitchen for a final answer as to whether the first victim loved him. "[S]he responded to him in the vernacular to go F himself— and its's a four-letter word." The psychiatrist who was called by the Commonwealth in rebuttal testified that the defendant told him that he said to the first victim, "I said hello to you. Why don't you say hello to me?" She replied, "Well, why are you here?" He replied, "I'm here because I care about you." She answered, "Why the F don't you get out of here?" For the purposes of this appeal, we will assume, as appears to be the case, that the defendant's statements to the psychiatrists were admitted for all purposes and not simply on the question of his mental competence.

[2] In these circumstances, it would seem that, even if we were to accept the defendant's argument, a manslaughter charge would have been appropriate only as to the first killing.

jury's sense of responsibility in its fact-finding function. We have considered the judge's instructions, particularly the instructions given after the defendant's objection to the initial charge, and conclude that there was no error. The judge made it manifest that the jury were "the final word on the facts of the case," and that any appellate process would not deal with their factual determinations. We have suggested that, in the absence of special circumstances, the judge should not refer to the appellate process. *Commonwealth* v. *Walker*, 370 Mass. 548, 574-575, cert. denied, 429 U.S. 943 (1976). But here, as in the *Walker* case, we see no significant threat to the jury's sense of responsibility and thus find no error in the instructions taken as a whole. See *Commonwealth* v. *French*, 357 Mass. 356, 404 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972); *Commonwealth* v. *Mascolo*, 6 Mass. App. Ct. 266, 276-277, cert. denied, 439 U.S. 899 (1978); *United States* v. *Miceli*, 446 F.2d 256, 259 (1st Cir. 1971).

4. We have considered the record, pursuant to our responsibilities under G. L. c. 278, § 33E, and conclude that there is no reason to order a new trial or a reduction in either of the verdicts which found the defendant guilty of murder.

*Judgments affirmed.*