## COMMONWEALTH vs. JAMES LATTIMORE.

Suffolk.    September 9, 1985. — December 23, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Jury and Jurors. Practice, Criminal,* Challenge of jurors, Assistance of counsel, Capital case. *Constitutional Law,* Assistance of counsel.

The record of a murder trial did not support the defendant's contention that he was denied an impartial jury because the prosecutor systematically excluded black jurors, where the reasons given by the prosecutor for exercising peremptory challenges pertained to the individual qualities of the prospective juror and not to that juror's group association. [447-448]

The judge at the trial of a murder case did not abuse his discretion in denying the defendant's challenges of two prospective jurors for cause, where the defendant offered nothing more in support of his requests than the facts that one juror saw her brother-in-law, a retired police officer, on a daily basis and that the second juror had a brother who was a police officer. [449-450]

The record of a murder trial did not support the defendant's contention that additional peremptory challenges, in excess of the sixteen peremptory challenges he had exercised, were required in order to obtain an impartial jury. [450]

A claim of ineffective assistance of counsel for the defendant in a murder case was not supported by the fact that the defendant's trial counsel was unable to articulate a basis for eliciting certain information from a witness who had identified the defendant as the person who fatally shot the victim, where the defendant did not show that better work might have accomplished something material for his defense. [451-452]

Where the overwhelming evidence was that a surviving assault victim, rather than the defendant in a murder case, had instigated a neighborhood brawl which led to his being shot and wounded by the defendant, and his companion being shot and killed by the defendant, this court, under G.L. c. 278, § 33E, vacated a verdict of guilty of murder in the first degree even though the defendant's use of a gun in the killing was sufficient to support such verdict, and ordered a verdict of murder in the second degree to be entered. [452-454]

INDICTMENTS found and returned in the Superior Court Department on December 21, 1981.

The cases were tried before *James P. Donohue,* J.

*Geline W. Williams* for the defendant.

*Judy G. Zeprun,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, James Lattimore, was convicted of murder in the first degree, assault with intent to commit murder, and assault and battery by means of a dangerous weapon.[1] The defendant was identified by the surviving victim, Glen Smith, as the person who fatally shot one Robert "Red" Phillips. Smith also identified the defendant as the person who shot and wounded him. On appeal, the defendant argues error in the empanelment of the jury and denial of the effective assistance of counsel. The defendant at oral argument also has asked us to exercise our power under G. L. c. 278, § 33E (1984 ed.). We conclude that we should exercise our power under § 33E in favor of the defendant, and we order that a verdict of murder in the second degree be entered.

1. *Empanelment of the jury.*

A. *Misuse of Peremptory Challenges.* Relying on *Commonwealth* v. *Soares,* 377 Mass. 461, 479-480, cert. denied, 444 U.S. 881 (1979), the defendant asserts that he was denied an impartial jury because the prosecutor systematically excluded black jurors.[2] The record does not support the defendant's contention.

During the empanelment, the prosecutor used six of his sixteen peremptory challenges to exclude three blacks and three whites. After the prosecutor challenged two blacks and a white,[3]

---

[1] The defendant was sentenced to a term of life imprisonment at the Massachusetts Correctional Institution at Walpole (now Cedar Junction) on the conviction for murder in the first degree. The defendant was sentenced to not more than ten nor less than nine years at M.C.I., Walpole, on each of the other convictions. These latter two sentences are to be served concurrently with the life sentence.

[2] The defendant is black; Smith is black; the murder victim was white.

[3] The defendant asks us to extend the *Soares* case so that a prospective juror married to a person from a different, discrete group, as defined by race, color, creed or national origin, may be included in the spouse's discrete group. We decline to do so. In *Soares, supra* at 488, we said that "exercise of peremptory challenges to exclude members of discrete groups solely on

the defendant objected and claimed that "a pattern of conduct [had] developed whereby several prospective jurors who [had] been challenged peremptorily [were] members of a discrete group, and . . . there [was] a likelihood they [were] being excluded from the jury solely by reason of their group membership." *Commonwealth* v. *Soares, supra* at 490.

In response to the defendant's objection, the judge asked for an explanation from the prosecutor. The justification for the second peremptory challenge[4] was based on the fact that the juror was wearing a gold earring and the prosecutor did not "like his looks." The prosecutor said that the third challenge to a black juror was based on the fact that the juror lived with a nephew who had been convicted for carrying a gun. Based on the prosecutor's statements, the judge found that the Commonwealth was not exercising its challenges simply to exclude members of a discrete group.

There was no error. "[A] prosecutor may fear bias on the part of one juror because he has a record of prior arrests or has complained of police harassment, and on the part of another simply because his clothes or hair length suggest an unconventional lifestyle. . . ." *Commonwealth* v. *Soares, supra* at 485 n.27, quoting *People* v. *Wheeler,* 22 Cal.3d 258, 275 (1978). The prosecutor gave reasons which "pertain[ed] to the individual qualities of the prospective juror and not to that juror's group association." *Commonwealth* v. *Soares, supra* at 491. The record supports the conclusion that the prosecutor did not misuse his peremptory challenges.[5]

---

the basis of bias presumed to derive from that *individual's membership in the group,* contravenes . . . art. 12 of the Declaration of Rights" (emphasis supplied).

[4] A black juror had been selected before the prosecutor's exercise of any peremptory challenges of potential black jurors. There was no explanation for the first challenge to a prospective black juror.

[5] We note that the record reflects that the defendant challenged eleven women. The Commonwealth did not seek any relief from the judge. See *Commonwealth* v. *Reid,* 384 Mass. 247, 251-256 (1981). Four of those so challenged had ties to law enforcement.

B. *Challenges for cause.* The defendant argues that two prospective jurors should have been excused for cause. "The defendant undertakes a heavy burden in attempting to persuade an appellate court that there was error in a denial of a challenge for cause." *United States* v. *Gullion,* 575 F.2d 26, 29 (1st Cir. 1978). "There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury." *United States* v. *Ploof,* 464 F.2d 116, 118-119 n.4 (2d Cir.), cert. denied sub nom. *Godin* v. *United States,* 409 U.S. 952 (1972). "If the trial judge, who conducted the voir dire . . ., believed that he had impanelled a jury of twelve open-minded, impartial persons, then we will set aside his action only where juror prejudice is manifest." *United States* v. *McNeill,* 728 F.2d 5, 9 (1st Cir. 1984).

It is a trial judge's function to make the initial determination whether "it appears that . . . the juror may not stand indifferent." G. L. c. 234, § 28 (1984 ed.). "[T]hat decision will not be disturbed on appeal unless the complaining party demonstrates that there was a substantial risk that the case would be decided in whole or in part on the basis of extraneous issues." *Commonwealth* v. *Sheline,* 391 Mass. 279, 290-291 (1984).

The defendant objected to one juror because she saw her brother in-law, a retired police officer, on a daily basis. That fact alone is insufficient to establish partiality. Therefore, there was no basis for a challenge for cause.

The other juror was one Wells, a black. His brother was also a police officer. The defendant labels the trial judge's refusal to excuse Wells as "egregious" error. He contends that the voir dire responses of that venireman demonstrate an actual bias. The defendant states that the judge later excused another prospective juror, one Hill, who gave a "virtually identical response." The defendant misreads the record. The two jurors, Wells and Hill, gave diametrically opposite answers to the question whether they would believe the testimony of a police officer under oath in preference to that of a civilian witness

under oath; Wells replied no[6] and Hill replied yes. There is no error in denial of the defendant's request that juror Wells be excused for cause.

C. *Denial of the defendant's motion for additional peremptory challenges.* The defendant asserts that it was error to deny his motion for six additional peremptory challenges. At empanelment the defendant had sixteen peremptory challenges. See Mass. R. Crim. P. 20 (c) (1).[7] All sixteen challenges were used. The defendant argues that, had his motion for extra peremptory challenges been allowed, "the composition of the jury would have been different."

Assuming, without deciding, that a judge has authority to permit more challenges than provided for by rule, see *Commonwealth* v. *Walker,* 379 Mass. 297, 299-301 (1979), there is no support in this record that additional challenges were required in order to obtain an impartial jury.[8]

---

[6] Earlier, in answer to a preliminary question, "Would you tend to believe the testimony of a police officer under oath in preference to that of a civilian witness?", Wells answered: "I guess I would, possibly." As phrased, the question does not require the civilian witness be under oath. The defendant relies on this earlier question as establishing actual bias. The judge who saw the juror was in the best position to determine whether the juror understood the question or whether further questions were required. In any event, the judge did ask further questions. We view the entire voir dire to determine whether the defendant has sustained his burden of showing actual bias.

[7] Rule 20 (c) (1) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 890 (1979), provides in relevant part: "Upon the trial of an indictment for a crime punishable by imprisonment for life, each defendant shall be entitled to twelve peremptory challenges of the jurors called to try the case. . . . Each defendant in a trial of an indictment for a crime punishable by imprisonment for life in which additional jurors are impaneled under subdivision (d) [alternate jurors] of this rule shall be entitled to one additional peremptory challenge for each additional juror."

[8] On appeal, the defendant claims that there was a possibility of racial prejudice in this case. The defendant does not argue that there are special factors which "suggest a significant likelihood that racial prejudice [may have] infect[ed his] trial." *Ristaino* v. *Ross,* 424 U.S. 589, 598 (1976). The defendant relies solely on the fact that the victim was white and he is black. That fact does not require a conclusion that the trial was infected with racial prejudice. See *id.* at 597.

2. *Effective Assistance of Counsel.*

The defendant argues that he was denied his right to the effective assistance of counsel. Because of the inability of his trial counsel to articulate a basis for the admissibility of certain evidence favorable to the defense, the defendant argues that counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer" and deprived him of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).[9] At trial only Smith identified the defendant as the culprit. The defendant's theory was that Smith's former wife shot at her former husband, wounding him and accidently killing "Red" Phillips. The defendant claimed that Smith's former wife acted out of frustration as the result of years of abuse by Smith. The evidence was conflicting as to whether Linda Smith was at the scene of the crime. At trial Smith said she was not.[10]

Throughout the trial, defense counsel[11] elicited evidence from the witnesses that Smith physically abused his former wife over a period of years, that earlier on the day of the crimes he had injured her in the act of breaking into her apartment, and that Smith was a violent person. The defendant's attorney attempted to elicit from Smith answers concerning Smith's physical abuse of his former wife and whether, as a result of that abuse, she had obtained a restraining order. The defendant's trial counsel was unable to articulate a basis for

---

[9] "The defendant here claims that he was deprived of both his Federal and State constitutional rights to effective assistance of counsel. Consideration of the Massachusetts test of ineffective assistance of counsel, as set forth in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), leads us to the conclusion that, if the *Saferian* test is met, the Federal test is necessarily met as well. We accordingly examine the merits of the defendant's challenge on the basis of the *Saferian* standard. We leave open the question of what differences, if any, exist between the two standards." *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985).

[10] In his opening statement, the prosecutor indicated that Smith would place his former wife at the scene of the crime.

[11] Appellate counsel was not trial counsel.

eliciting this information from Smith, and the evidence was excluded.[12]

The defendant concedes that there was testimony from other witnesses of the long term repetitive episodes of violence by Smith against his former wife. However, the defendant contends that, if Smith himself had admitted on cross-examination "that he had struck and beaten Linda before and after their divorce," such an admission would have been "powerful evidence of Linda's motive to kill and of Glen's motive to 'frame' the defendant and lie about Linda's presence during the shooting." However, the defendant is not entitled to testimony according to his script. The evidence of Smith's conduct toward his former wife was explored fully. Both the prosecutor and the defense counsel commented on Smith's violent conduct in their final arguments.[13] The defendant has not demonstrated that better work might have accomplished something material for his defense. See *Commonwealth* v. *Saferian, supra* at 96. Thus, we need not decide whether the conduct of defense counsel fell measurably below that which might be expected from an ordinary, fallible lawyer.

3. *Review Pursuant to G. L. c. 278, § 33E.*

"This court has the obligation pursuant to § 33E to broadly consider the whole case on the law and the facts, and '[u]pon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, . . . or for any other reason that justice may require (*a*) order a new trial or (*b*) direct the entry of a verdict of a lesser degree of guilt. . . .' G. L. c. 278, § 33E. Although we have sometimes said

---

[12] On appeal, the defendant concedes that the judge correctly excluded the evidence because counsel did not articulate an appropriate basis for its admissibility.

[13] In his closing argument, defense counsel stated that Smith's former wife had "something . . . to hide;" that she was repeatedly terrorized and physically abused for years; and that she was the one who had motive and opportunity to try to kill Smith. The prosecutor, in his closing argument, stated that there was "no question" that Smith had a reputation for violence, and that Smith "wouldn't be a nice neighbor." The prosecutor argued against the defense theory that Smith's former wife was the one who fired the shots.

that in the absence of an objection . . . this court will find reversible error under G. L. c. 278, § 33E, 'only "upon a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred," ' . . . the scope of § 33E review is, in fact, broader. 'The search under § 33E is a more general and an obligatory one for a result that may be "more consonant with justice." ' . . . General Laws c. 278, § 33E, 'operates as a type of "safety valve" by ensuring review as to all aspects of cases regardless of the absence of claim of error.' " *Commonwealth* v. *Cole,* 380 Mass. 30, 38 (1980).

We recognize that the use of a gun in a killing is sufficient to support a verdict of murder in the first degree. See, e.g., *Commonwealth* v. *Jones,* 366 Mass. 805, 809 (1975). Nevertheless, in considering whether the verdict of guilty of murder in the first degree was against the weight of the evidence, we view the evidence in a large or nontechnical sense. *Commonwealth* v. *Bowman,* 373 Mass. 760, 765 (1977).

Apart from the defendant's theory that this was a case of domestic violence, the record indicates that Smith had instigated a neighborhood brawl. It was Smith who, on the day of the murder, assaulted his former wife. During the day, Smith had terrorized and harassed the neighbors. In the evening he returned with "Red" Phillips and drove through the area shouting obscenities. After 11:00 P.M., Smith and one of the neighbors got into a loud argument. One neighbor arrived at Smith's car with a baseball bat. Other neighbors and the defendant rushed toward the car. The first shots were fired. The shots were wild and "look[ed] like the consequences of an untoward, foolish introduction of a dangerous weapon in a fight not otherwise at a lethal pitch . . . , but if malice is suggested, it is not the deliberated or purposeful malice of an assassin." *Commonwealth* v. *King,* 374 Mass. 501, 507 (1978).

The overwhelming evidence is that Smith, not the defendant, was intent on provoking an incident. We believe that the weight of the evidence supports the inference that the defendant's "criminal involvement was not of the nature that judges and juries, in weighing evidence, ordinarily equate with murder in the first degree." *Commonwealth* v. *Williams,* 364 Mass. 145,

152 (1973). The case is remanded to the Superior Court, where the verdict of guilty of murder in the first degree and the sentence previously imposed on the conviction will be vacated. A verdict of guilty of murder in the second degree will be entered and sentence of "imprisonment in the state prison for life" at M.C.I., Cedar Junction, will be imposed, as provided in G. L. c. 265, § 2 (1984 ed.).

*So ordered.*