COMMONWEALTH *vs.* DAVID GARABEDIAN.

Middlesex.  September 10, 1986. — February 25, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Malice. Practice, Criminal,* Capital case, Challenge to jurors, Instructions to jury. *Evidence,* Death certificate, Photograph, Expert opinion. *Insanity. Witness,* Expert.

At a murder trial the evidence at the close of the Commonwealth's case was sufficient to permit the jury to conclude that the victim of the crime was the person named in the indictment. [307-308]

At a criminal trial the prosecutor's exercise of a peremptory challenge as to a single member of the defendant's ethnic group failed to support a claim that the prosecution had used peremptory challenges to exclude persons solely by reason of their affiliation with a discrete group. [309]

At a murder trial it lay within the judge's discretion to admit in evidence photographs depicting the victim's body, where the photographs were clearly relevant to the issues of extreme atrocity or cruelty, and premeditation. [309]

At a murder trial at which the defendant claimed that his violent conduct had been the result of involuntary chemical intoxication brought on by contact with lawn care chemicals in his employment, the judge did not abuse his discretion in permitting two clinical psychiatrists with some experience in the area of pesticide poisoning to testify as to the issue of mental disease or defect, under this court's standard in *Commonwealth v. McHoul,* 352 Mass. 544 (1967). [310]

The evidence at a murder trial was sufficient to support a verdict of guilty of murder in the first degree on the basis of extreme atrocity or cruelty, where medical testimony indicated that the means employed to inflict death had been disproportionate to the means needed to do so; where the instrumentalitites used, viz., hands, drawstring, and rocks, were progressively more brutal; and where, as a result of being struck by heavy rocks, the victim's face was distorted beyond recognition. [311]

At a murder trial evidence of the severity of the injuries inflicted on the victim and the selection by the defendant of three different instruments of death demonstrated "a conscious and fixed purpose to kill continuing for a length of time," and warranted a finding of first degree murder by reason of deliberately premeditated malice aforethought [312]

The judge at a first degree murder trial adequately instructed the jury as to the defendant's claim of involuntary chemical intoxication as bearing on the issues of extreme atrocity or cruelty and deliberate premeditation. [312]

At a murder trial the prosecutor, in all areas contested by the defendant, offered appropriate arguments and urged inferences which were permissible on the evidence. [312-313]

Where the defendant's testimony at a murder trial indicated that he did not attack the victim because she had scratched him, and that he was unaware of the scratch when it occurred, the alleged scratch did not constitute provocation entitling the defendant to a jury instruction on voluntary manslaughter. [313-315]

Evidence that, as a result of a murder defendant's involuntary chemical intoxication, his violent conduct could have been triggered by minimal provocation did not entitle him to a jury instruction on voluntary manslaughter as a lesser included offense. [315]

Where evidence at a murder trial showed that the defendant had killed the victim by the use of three instrumentalities, each calculated to result in her death, the defendant was not entitled to have the jury instructed as to a verdict of involuntary manslaughter by reason of his claim of involuntary chemical intoxication. [315-316]

In the case of a defendant convicted of murder in the first degree on evidence showing that he had killed the victim through three separate, progressively brutal acts, this court concluded that the circumstances did not warrant reduction of the verdict pursuant to its plenary review power under G. L. c. 278, § 33E. [316-318]

LIACOS, J., with whom O'CONNOR, J., joined would have ordered the entry of a verdict of murder in the second degree. [319-323]

INDICTMENT found and returned in the Superior Court Department on April 6, 1983.

The case was tried before Robert A. Barton, J.

Robert M. Mardirosian (JoAnne Meyers with him) for the defendant.

Pamela L. Hunt, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant was found guilty by a Superior Court jury of murder in the first degree on the basis of deliberately premeditated malice aforethought and extreme atrocity or cruelty. He asserts error in the denial of his motions for a required finding of not guilty at the close of the Common-

wealth's case and at the close of all the evidence because the Commonwealth failed to prove that the victim was Eileen F. Muldoon, as charged in the indictment; in the prosecution's improper use of peremptory challenges during the empanelling of the jury; in the admission in evidence of certain color photographs of the victim's body and the crime scene; in the admission of certain testimony of two doctors; in the judge's denial of motions for required finding as to so much of the indictment as charged murder in the first degree; in certain statements by the prosecutor made during closing argument; and in the judge's failure to instruct the jury on voluntary and involuntary manslaughter. The defendant also urges that this court should grant him relief pursuant to our discretionary power under G. L. c. 278, § 33E (1984 ed.). We conclude that there was no error, and further conclude that the defendant is not entitled to relief under G. L. c. 278, § 33E. We affirm.

On March 29, 1983, the date of the murder, the defendant was employed by the Old Fox Lawn Care Company of Chelmsford, which provided lawn care services to customers. The defendant's duties included "surveying" the lawns of prospective customers as well as applying liquid chemical treatments to customers' lawns. The defendant had worked for the company for about one month prior to the murder. During this period he was frequently exposed to lawn-care chemicals. He breathed in the chemical vapors, and at times the chemicals touched his skin. He had various symptoms of poor health which the jury could have found were caused by the chemicals. There was expert testimony that chemical intoxication was the cause of the defendant's violent conduct.

The facts are established in part from the defendant's testimony. On March 29, 1983, the defendant left Old Fox to perform his first lawn survey at approximately 7:30 A.M. He then had various appointments throughout the day in several cities and towns, including Lincoln, Millis, and Shrewsbury. He testified that he had not eaten or urinated all day. At 4:30 P.M., the defendant performed a lawn survey at the home of Margaret Brassard in Townsend. Her only comments regarding the defendant's physical condition were that she found him to

be very polite and a very clean-cut gentleman. He left the Brassard home at approximately 4:55 P.M.

The defendant then traveled to the Muldoon home on Fletcher Street in Dunstable. Upon arriving, he rang the doorbell and knocked on the door several times, but no one answered. He then proceeded to measure the yard and fill out his survey sheets. Because he believed no one was home, he walked to the left rear of the house and, facing the house, began to urinate on the grass. When he had almost finished, he noticed a woman standing toward his right on top of a hill looking down at him. She came upon him and castigated him for urinating. As soon as the defendant saw her he closed his zipper and apologized to her. He walked around a wall and up the hill to attempt to talk the woman out of her anger. She stated, "Well, I think I should call your boss." He continued to apologize and "tapped her on the arm" saying, "I'm really sorry you feel this way." The woman screamed and scratched the defendant on the face, drawing blood and leaving a cut. The defendant then grabbed the woman around the neck, strangling her manually. They were on top of a ledge and both fell to the ground. The woman was not moving. A tie string which the defendant had taken from his jacket earlier in the day was lying next to him, which he then used to strangle the woman again. He then picked up three large rocks, weighing forty-eight, forty-four, and twenty-two pounds, which he threw at the victim, hitting her face and head.

1. The defendant contends that the Commonwealth failed to prove that the murder victim was Eileen F. Muldoon, as charged in the indictment. Thus, he maintains that the trial judge erred in denying his motions under Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), for a required finding of not guilty. To review this argument we examine the evidence at the close of the Commonwealth's case, when the defendant first filed a motion for a required finding. *Commonwealth* v. *Porter,* 384 Mass. 647, 651-652 (1981), and cases cited. The motion was properly denied "if all the circumstances including inferences [that are not too remote according to the usual course of events] are of sufficient force to bring minds of ordinary

intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 676 (1979). *Commonwealth* v. *McLeod,* 394 Mass. 727, 746, cert. denied sub nom. *Aiello* v. *Massachusetts,* 474 U.S. 919 (1985). *Commonwealth* v. *Nickerson,* 388 Mass. 246, 251-252 (1983). We pass over the question whether, having proved that the defendant killed a person, the Commonwealth must also prove that the victim was the person named in the indictment. We conclude that the Commonwealth presented sufficient evidence that the victim was Eileen F. Muldoon.

The Commonwealth introduced the death certificate of Eileen F. Muldoon, which was admissible under G. L. c. 46, § 19. (1984 ed.). The death certificate, by itself, is "prima facie evidence of the facts recorded." *Id. Miles* v. *Edward O. Tabor, M.D., Inc.,* 387 Mass. 783, 786 (1982). Thus, "in the absence of competing evidence, the jury were permitted, but not required, to find that the presumed fact was true beyond a reasonable doubt." *Commonwealth* v. *Pauley,* 368 Mass. 286, 291-292, appeal dismissed, 423 U.S. 887 (1975). Furthermore, the forensic pathologist who examined the victim's body testified, without objection, that the body was that of Eileen F. Muldoon.

The Commonwealth also established that on March 29, 1983, Eileen F. Muldoon lived on Fletcher Street in Dunstable, at the home where the murder took place. A coworker of Eileen Muldoon testified that she left work at approximately 5 P.M. that day in a white automobile; the chief of police investigating the scene of the murder testified that a white automobile was parked in the Muldoon garage when he arrived.[1] There was evidence that keys found near the body belonged to Eileen F. Muldoon. Considered together, this evidence is sufficient for a jury to conclude that the victim was Eileen F. Muldoon, as charged in the indictment.

---

[1] The coworker testified that Eileen Muldoon left work in a "white . . . Buick," while the chief of police testified that a "white Oldsmobile" was parked in the garage. Despite this inconsistency in the testimony, the jury were warranted in finding that the automobiles described by the witnesses were one and the same.

2. The defendant is of Armenian heritage. During the empanelling of the jury, the Commonwealth exercised its first peremptory challenge to exclude a woman, also of Armenian heritage. Upon objection by defense counsel, the judge inquired of the prosecutor his reasons for having exercised the challenge. The prosecutor stated that he had several reasons for having exercised the challenge and that it was not his intention to exclude persons of Armenian heritage from the jury. He stated, and the judge accepted the fact, that he did not even realize that the prospective juror was of Armenian heritage. This episode, standing alone, fails utterly to establish that the prosecution used its peremptory challenges to exclude members of a discrete group solely by reason of affiliation. See *Commonwealth* v. *Soares,* 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979).

3. The defendant asserts error in the admission in evidence of three photographs, on the ground that the prejudicial nature of the photographs outweighed any probative or evidential value that they contain. Two photographs depict the victim's body. One of these two is a distant scene of the victim's entire body as it was found, while the other is a close-up color photograph of the victim's face. The third photograph depicts a bloodstained hole in the ground resulting from the victim's head being struck by the rocks. The defendant contends that all three photographs had minimal probative value and were highly inflammatory and prejudicial. Because the judge admitted the photographs without inquiry into whether other, less inflammatory, photographs existed, the defendant claims that the judge abused his discretion. The defendant acknowledges that the judge possesses considerable discretion in the admission of photographs, even though gruesome and inflammatory, if they possess evidential value on a material matter. *Commonwealth* v. *Bastarache,* 382 Mass. 86, 105-106 (1980). *Commonwealth* v. *Stewart,* 375 Mass. 380, 385 (1978). There was no error. The photographs were clearly "relevant to extreme atrocity or premeditation, both of which were in issue." *Commonwealth* v. *Sielicki,* 391 Mass. 377, 382 (1984).

4. The defendant argues that the opinion testimony of two expert witnesses on behalf of the Commonwealth, Drs. Martin J. Kelly and Michael S. Annunziata, exceeded the fields of expertise for which they had been qualified. Specifically, the judge found the two witnesses to be experts in the fields of medicine and psychiatry. The Commonwealth offered the testimony of the two witnesses with regard to the issue of mental disease or defect under this court's opinion in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). Although he acknowledges that the witnesses were competent to testify in the areas for which they were qualified, the defendant contends that they were not qualified to render opinions as to whether the defendant was intoxicated by organophosphate compounds at the time of the crime.

"The admission of expert testimony lies largely in the discretion of the trial judge." *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974), and cases cited. Furthermore, "the qualification of a witness to offer an expert opinion on a given question is for determination by the trial judge as a preliminary issue of fact." *Commonwealth* v. *Perry,* 385 Mass. 639, 645 (1982), quoting *Commonwealth* v. *Seit,* 373 Mass. 83, 92 (1977). We conclude that the judge did not abuse his discretion in admitting the testimony of the two witnesses. Both witnesses were experienced clinical psychiatrists who were clearly qualified to testify concerning the defendant's condition at the time of the death under the standards announced in *Commonwealth* v. *McHoul, supra.* Although the defendant points to their lack of qualifications regarding organophosphate intoxication, both witnesses had had some experience in the area of pesticide poisoning or had educated themselves through a review of the relevant medical literature. The witnesses developed their opinions as a result of examinations and evaluations of the defendant himself, a review of the defendant's medical and psychological records, and interviews with the employees of Old Fox and other witnesses in the case. Certainly, these two witnesses "possess[ed] sufficient skill, knowledge or experience in the field of [their] testimony that the jury . . . receive[d] appreciable assistance from it." *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975). *Commonwealth* v. *Vitello,* 376 Mass. 426, 481 (1978).

5. The defendant next argues that the evidence was insufficient to warrant a verdict of guilty on so much of the indictment as charged murder in the first degree. The judge's instructions permitted the jury to find the defendant guilty of murder in the first degree based on either deliberate premeditation or extreme atrocity or cruelty. We conclude that, when viewed in a light most favorable to the Commonwealth, sufficient evidence existed for the jury to find either extreme atrocity or cruelty or deliberate premeditation. *Commonwealth* v. *Burbank,* 388 Mass. 789, 797 (1983). *Commonwealth* v. *McInerney,* 373 Mass. 136, 153 (1977).

The defendant's principal argument with respect to the issue of extreme atrocity or cruelty is that medical evidence introduced in the case indicated that the victim was unconscious after the manual strangulation. Thus, the defendant contends that, while in an unconscious state, the victim could not experience any pain as a result of the defendant's further actions. This court has not required suffering by the victim as an "indispensable element of the crime of murder with extreme atrocity or cruelty." *Commonwealth* v. *Podlaski,* 377 Mass. 339, 348 (1979). Suffering is but one of the factors that we have considered. "Our cases have usually looked to the consciousness and degree of suffering of the victim, the disproportion between the means actually needed to inflict death and those employed, the instrumentalities employed and the extent of physical injury." *Commonwealth* v. *Cadwell,* 374 Mass. 308, 318 (1978), quoting *Commonwealth* v. *Connolly,* 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970). In this case, the medical testimony indicated that the cause of death was "multiple blunt force injuries to the head and to the face and . . . strangulation." The means employed to inflict death were disproportionate to the means needed to inflict death. Furthermore, the instrumentalities used to inflict death, hands, string, and rocks, were progressively more brutal. Finally, the extent of the physical injuries supported a finding of extreme atrocity or cruelty; testimony indicated that, as a result of the rock throwing, the victim's face was distorted beyond recognition. These injuries did not occur after death but were a cause of death.

The defendant also contends that the evidence does not support a verdict of murder in the first degree as a result of deliberately premeditated malice aforethought. He argues that the suddenness of the killing, the fact that he did not go to the Muldoon residence with the intent to murder, and the absence of hostility between the parties indicate the lack of premeditation. This argument overlooks our holdings that deliberate premeditation can occur within a few seconds. *Commonwealth* v. *Tucker,* 189 Mass. 457, 494-495 (1905). *Commonwealth* v. *Lanoue,* 392 Mass. 583, 590 (1984). The severe injuries inflicted on the victim and the selection by the defendant of three different instruments of death demonstrated "a conscious and fixed purpose to kill continuing for a length of time and warranted a finding of murder with deliberately premeditated malice aforethought." *Commonwealth* v. *Satterfield,* 362 Mass. 78, 82 (1972), quoting *Commonwealth* v. *Bonomi,* 335 Mass. 327, 356 (1957).

The defendant argues that evidence of involuntary intoxication should have precluded a verdict of guilty of murder in the first degree with respect to both extreme atrocity or cruelty and deliberate premeditation. *Commonwealth* v. *Gould,* 380 Mass. 672, 680-687 (1980). *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982). *Commonwealth* v. *King,* 374 Mass. 501, 508 (1978). Because the judge properly charged the jury with respect to the issue of intoxication in relation to extreme atrocity or cruelty and deliberate premeditation, there was no error. It is clear that the jury rejected involuntary intoxication as a causative force in the murder.

6. The defendant next argues that the prosecutor, on six occasions during closing argument, misstated the evidence admitted at trial and referred to evidence not admitted at trial. He does acknowledge, however, that "[i]n closing argument, counsel may argue the evidence and the fair inferences which can be drawn from the evidence." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 378 (1978), and cases cited. *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). Because defense counsel failed to object to the prosecutor's argument, we may limit our inquiry to a determi-

nation whether there was a substantial risk of a miscarriage of justice. *Commonwealth* v. *Campbell,* 394 Mass. 77, 88 (1985), and cases cited. However, measured by any standard, there was no error. From our examination of the record, we conclude that the prosecutor in all six contested areas was offering appropriate arguments and urging inferences which were permissible on the evidence.

7. The defendant claims that the judge erred in failing to instruct the jury on manslaughter as a lesser included offense. Under cases decided by this court, "if any view of the evidence will permit a finding that the offense was manslaughter, the judge must charge on manslaughter." *Commonwealth* v. *Martinez,* 393 Mass. 612, 613-614 (1985). *Commonwealth* v. *LePage,* 352 Mass. 403, 419 (1967). Furthermore, this court has held that "[t]he fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereupon. . . . However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." *Commonwealth* v. *Schnopps,* 383 Mass. 178, 182 (1981), *S.C.,* 390 Mass. 722 (1984), quoting *Commonwealth* v. *Campbell,* 352 Mass. 387, 398 (1967). The defendant asserts that, based on the evidence presented at trial, he was entitled to instructions on both voluntary and involuntary manslaughter. We disagree.

Voluntary manslaughter has been defined as a killing committed in "a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *McLeod,* 394 Mass. 727, 738 (1985), quoting *Commonwealth* v. *Hicks,* 356 Mass. 442, 445 (1969). In addition, the jury must be able to infer that a reasonable person would have become sufficiently provoked and that, in fact, the defendant was provoked. *Commonwealth* v. *McLeod, supra.* Finally, "[a] verdict of voluntary manslaughter requires the trier of fact to conclude that there is a causal connection between the provocation, the heat of passion, and the killing." *Commonwealth* v. *Schnopps, supra* at 180-181.

The defendant testified that, when the victim would not accept his apologies for urinating on the grass near her house,

he "tapped her on the arm" in an attempt to draw her attention to his pleas. In response, she turned and scratched the defendant on the face, drawing blood. This, he claims, was sufficient provocation "to produce in an ordinary person such a state of passion, anger, fear, fright or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth* v. *Walden,* 380 Mass. 724, 728 (1980). *Commonwealth* v. *Rooney,* 365 Mass. 484, 494-495 (1974), and cases cited. As stated in *Commonwealth* v. *Walden, supra* at 727, however, not all physical contact between a defendant and a victim is sufficient to require a manslaughter instruction even though the victim initiated the contact.[2] See *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 321 (1973). However, if we assume that the scratch inflicted by the victim could appropriately be found by the jury to be a "sufficient" provocation, a charge on voluntary manslaughter was nevertheless not required because no causal connection was shown between the infliction of the scratch by the victim on the defendant and the attack. The defendant's own testimony indicated that he did not attack the victim because she had scratched him; he did not even know that the victim had scratched him at the time.[3] Viewing this evidence in the light most favorable to the defendant, see *Commonwealth* v. *Schnopps, supra* at 179; *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975), it is hardly of a type which would entitle the defendant

---

[2] We pass over the fact that the defendant's own testimony indicates that he initiated the contact by tapping the victim on the arm to draw her attention.

[3] On cross-examination, the defendant testified to the following: .: *Q.*: "And you grabbed her?" *A.*: "Yes." *Q.*: "Okay. And she screamed?" *A.*: "Yes." *Q.*: "Did you let her go." *A.*: "When I first grabbed her, I did let her go." *Q.*: "And she scratched you?" *A.*: "Yes." *Q.*: "And you were mad then, weren't you?" *A.*: "I don't remember if I was mad or not then." *Q.*: "Did you feel her scratch you?" *A.*: "I don't remember feeling her scratch me." *Q.*: "Did you feel blood?" *A.*: "No, sir." *Q.*: "Did you feel any — anything on your face?" *A.*: "No, sir." *Q.*: "And then you grabbed her by the neck?" *A.*: "Yes, sir." *Q.*: "Is that because she scratched you?" *A.*: "No, sir." *Q.*: "You just decided to grab her by the neck?" *A.*: "Yes." *Q.*: "And you did make that decision?" *A.*: "I don't know why I did it."

to an instruction on voluntary manslaughter. Given the defendant's testimony, "[t]he jury could not be permitted merely to speculate on whether the defendant in the course of the struggle might have been roused to the heat of passion." *Commonwealth v. Walden, supra* at 728. *Commonwealth v. Campbell, supra* at 392.

The defendant also asserts that the evidence from which the jury could find that he suffered involuntary intoxication, by reason of the effect of the chemicals he used in his work, also required an instruction on voluntary manslaughter. He states that the evidence, particularly the testimony of Drs. Peter S. Spencer and David M. Bear, indicates that as a result of his exposure to organophosphate compounds in the lawn treatments prepared by Old Fox "a slight provocation [of the sort] which without the influence of these compounds, might lead him or her to choose some other type of behavior which would not be agrressive" could have constituted a trigger which caused the aggressive tendencies of the chemically intoxicated defendant to surface. This argument, however, overlooks the objective standard that serves as the basis for determining sufficient provocation for a finding of voluntary manslaughter. *Commonwealth v. Amaral,* 389 Mass. 184, 188-190 (1983). "[T]here is no basis in our law for the defendant's suggestion that provocation should be viewed subjectively." *Id.* at 190. See *Commonwealth v. Burke,* 376 Mass. 539, 543 (1978); *Commonwealth v. Bermudez,* 370 Mass. 438, 441-442 (1976); *Commonwealth v. Leate,* 352 Mass. 452, 458 (1967); *Commonwealth v. Hartford,* 346 Mass. 482, 491 (1963).

Similarly, the defendant argues that a charge on involuntary manslaughter was required based on the evidence of involuntary chemical intoxication which rendered him incapable of forming an intent to kill. This argument, however, misperceives the nature of involuntary manslaughter. Involuntary manslaughter is "an unlawful homicide, unintentionally caused . . . by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct." *Commonwealth v. Campbell, supra* at 397. *Commonwealth v. Martinez,* 393 Mass. 612, 613 (1985). Here the

defendant strangled the victim manually, and, after they fell from the ledge, took the drawstring which had fallen from his pocket and proceeded to strangle her a second time. He then threw three large rocks at the victim which broke the bones of the victim's face rendering it unrecognizable. This "unlawful battery was quite 'likely to endanger life,' and hence could not be classified [as] . . . involuntary manslaughter. Plainly the result of the [blows] i.e., physical injury to the deceased, was intended as much as the [blows themselves]. Hence, it cannot be termed merely a 'disregard of probable harmful consequences.' " *Commonwealth* v. *Medeiros,* 395 Mass. 336, 342 (1985), quoting *Commonwealth* v. *Hicks,* 356 Mass. 442, 445 (1969). Again, the argument that the defendant was involuntarily intoxicated at the time of the killing goes to the question of criminal responsibility and not to the issue of involuntary manslaughter. We add that the evidence concerning chemical intoxication of the defendant was fully presented and argued, and it is clear that the jury rejected it as insignificant.

8. The defendant was convicted of murder in the first degree on the basis of both deliberately premeditated malice aforethought and extreme atrocity or cruelty. The evidence warranted those conclusions. Therefore, a consideration of our *discretionary* function under G. L. c. 278, § 33E, requires us to examine both of these grounds for the conviction to determine whether the exercise of our power is required to obtain a result "more consonant with justice." *Commonwealth* v. *Davis,* 380 Mass. 1, 15 n.20 (1980), quoting *Commonwealth* v. *Seit, supra* at 94. *Commonwealth* v. *Ransom,* 358 Mass. 580, 583 (1971). *Commonwealth* v. *Baker,* 346 Mass. 107, 109 (1963). We begin by noting that "[r]egard for the public interest impels us to use with restraint our power under § 33E to modify the jury's verdict. On the other hand it is clear that in all cases our obligations under § 33E require the most serious deliberation." *Commonwealth* v. *Williams,* 364 Mass. 145, 151 (1973). *Commonwealth* v. *Pisa,* 372 Mass. 590, 597, cert. denied, 434 U.S. 869 (1977).

With regard to the conviction of murder in the first degree on the basis of deliberate premeditation, we recognize a number

of factors that have influenced our decisions in the past to exercise our discretionary function under § 33E. Primary among these is a consideration that the killing reflects "spontaneity rather than premeditation." *Commonwealth* v. *Williams, supra* at 152. *Commonwealth* v. *Gaulden,* 383 Mass. 543, 556 (1981). While the facts of this case reflect a substantial degree of spontaneity, the usefulness of an analysis in these terms fades rapidly when one considers the time and sequence of events that culminated in the victim's death. The killing was not the result of a single act or blow but was the culmination of three distinct acts, each by itself capable of causing death and each requiring thought. By the defendant's own testimony, he manually squeezed the victim's neck for several seconds before they both fell from a ledge. On the ground, he found a string that had fallen from his pocket and proceeded to strangle her, once again for several seconds. Finally, he picked up three rocks of significant weight and threw them at the victim, one by one, two of which hit her in the face and head. According to the death certificate, the injuries received from each of these actions contributed to the cause of death. The defendant's actions demonstrate deliberation rather than spontaneity.

While it may be true that the defendant did not bring a weapon to the scene of the crime or go there with the intent to murder, see *Commonwealth* v. *Maldonado,* 389 Mass. 626, 632 (1983); *Commonwealth* v. *Almon,* 387 Mass. 599, 605 (1982), we conclude that these are not substantial mitigating factors here. Nor do we consider persuasive an argument that the defendant formed the intention to kill "in the heat of sudden affray or combat." *Commonwealth* v. *Baker, supra* at 119. The defendant was not involved in an "affray or combat"; on the contrary, he was the instigator of the conflict and the initiator of any physical contact when he "tapped" the victim on the arm. The facts here are in sharp contrast to those shown in cases where we have relied on heat of passion as a ground for affording relief to a defendant. See *Commonwealth* v. *Seit, supra* at 95; *Commonwealth* v. *Jones,* 366 Mass. 805, 809 (1975); *Commonwealth* v. *Ransom, supra* at 583; *Commonwealth* v. *Baker, supra* at 119. Nor can this case be considered

to fall within the pattern of cases involving "senseless encounters" because those also have involved a physical conflict between the victim and the defendant in which the victim has generally been the aggressor. See *Commonwealth* v. *Keough,* 385 Mass. 314, 320-321 (1982); *Commonwealth* v. *Tavares,* 385 Mass. 140, 157-159, cert. denied, 457 U.S. 1137 (1982); *Commonwealth* v. *King, supra* at 506; *Commonwealth* v. *Vanderpool, supra* at 750; *Commonwealth* v. *Jones,* 366 Mass. 805, 808 (1975); *Commonwealth* v. *Kinney,* 361 Mass. 709, 713 (1972); *Commonwealth* v. *Ransom, supra* at 583.

We turn now to the evidence of extreme atrocity or cruelty, which the Legislature has established as a basis for murder in the first degree. The question of extreme atrocity or cruelty is generally for the jury "who, as the repository of the community's conscience, can best determine when the mode of inflicting death is so shocking as to amount to extreme atrocity or cruelty." *Commonwealth* v. *Lacy,* 371 Mass. 363, 367-368 (1976), quoting *Commonwealth* v. *Connolly,* 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970). Thus, we hesitate to reduce a jury determination of murder in the first degree on the basis of extreme atrocity or cruelty to murder in the second degree in the absence of mitigating circumstances. We think it is inappropriate to reduce the verdict in this case when there was shocking evidence of extreme atrocity or cruelty. As described above the defendant killed the victim through three separate, progressively brutal acts, the last of which rendered the victim's face unrecognizable.

Although the defendant's age, character, and lack of a prior criminal record frequently are considered under § 33E, see *Commonwealth* v. *McDermott,* 393 Mass. 451, 460-461 (1984); *Commonwealth* v. *Dalton,* 385 Mass. 190, 196-197 (1982); *Commonwealth* v. *Seit, supra* at 95, those facts should not control here. The overriding factor in this case is that a woman was brutally murdered at her home by a young and physically strong man. The interests of justice do not require a new trial or a reduction of the defendant's conviction to murder in the second degree or manslaughter.

*Judgment affirmed.*

LIACOS, J. (concurring in part and dissenting in part, with whom O'Connor, J., joins). I have no disagreement with the legal analysis of the court. I write solely because, in my view, we should exercise our power under G. L. c. 278, § 33E (1984 ed.), to order entry of a verdict of guilty of murder in the second degree.

Pursuant to our power and duty under § 33E, we must consider whether the verdict is "against the weight of the evidence considered in. a large or nontechnical sense." *Commonwealth* v. *Bowman,* 373 Mass. 760, 765 (1977), citing *Commonwealth* v. *McInerney,* 373 Mass. 136, 140 (1977), and *Commonwealth* v. *Baker,* 346 Mass. 107, 109 (1963). See *Commonwealth* v. *Lattimore,* 396 Mass. 446, 453 (1985); *Commonwealth* v. *Almon,*.387 Mass. 599 (1982). As this court stated in *Commonwealth* v. *Gaulden,* 383 Mass. 543, 553-554 (1981): "Our § 33E power has not been limited to cases in which the evidence did not warrant the conviction but has included cases in which we concluded that justice required the entry of a verdict of a lesser degree of guilt. See, e.g., *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 749 (1975); *Commonwealth* v. *Williams,* 364 Mass. 145, 151-152 (1973); *Commonwealth* v. *Baker,* 346 Mass. 107, 109, 119 (1963)."

I do not argue that the court should consider reducing the verdict below that of murder. Nevertheless, the question that presents itself on the facts of this case is the less drastic one, whether there is ground for reducing the conviction from murder in the first degree to murder in the second degree. In addressing that question, "[a] most important consideration is whether the jury verdict is markedly inconsistent with verdicts returned in similar cases." *Commonwealth* v. *Gaulden, supra* at 556. Accordingly, while analysis under § 33E can never be merely "a process of 'color matching' " with prior cases, *Commonwealth* v. *Coleman,* 366 Mass. 705, 715 (1975), it is useful to consider the factors that have been influential in those decisions. Such an analysis, in my view, points to a reduction of the degree of David Garabedian's guilt.

The entire sequence of events the day of the killing reflects "spontaneity rather than premeditation." *Commonwealth* v.

*Williams, supra* at 152. The defendant brought no weapon to the Muldoon home.[1] See *Commonwealth* v. *Keough,* 385 Mass. 314, 320-321 (1982); *Commonwealth* v. *King,* 374 Mass. 501, 506-507 (1978); *Commonwealth* v. *Vanderpoorl, supra* at 749-750; *Commonwealth* v. *Williams, supra.* This distinguishes the case at hand from those where we have declined to exercise our power under § 33E, in part because in those instances the defendants either brought weapons "with a violent or vengeful purpose," or left an encounter with their victims to procure a weapon and returned to punish their vicitims. *Commonwealth* v. *King, supra* at 507. See, e.g., *Commonwealth* v. *Maldonado,* 389 Mass. 626, 632-633 (1983); *Commonwealth* v. *Almon, supra* at 605. The victim and the defendant had had no confrontation or dealings with each other prior to March 29, 1983.[2] The entire incident was characterized by "senseless conduct." *Commonwealth* v. *Keough, supra* at 321.[3]

The victim's fatal encounter with Garabedian fits into "the pattern of those cases involving senseless encounters in which . . . we have ordered the entry of a finding of a lesser degree of guilt. See *Commonwealth* v. *Tavares,* [385 Mass.] 140, 157-159 [, cert. denied, 457 U.S. 1137] (1982); *Common-*

---

[1] As we stated in *Commonwealth* v. *Seit,* 373 Mass. 83, 94 (1977), "No third-party witness exists to any part of the actual event, and the defendant's account, which he took the stand to defend, deserves consideration. See *Commonwealth* v. *Mahnke,* 368 Mass. 662, 700-704 (1975), cert. denied, 425 U.S. 959 (1976)." The court recognizes this principle in its own reci-tation of the circumstances of this homicide.

[2] The fact that the defendant and the victim were strangers, or had had no prior confrontation, was cited as one consideration in the court's conclu-sion that a verdict of manslaughter was "more consonant with justice" in *Commownealth* v. *Ransom,* 358 Mass. 580, 583 (1971). See *Commonwealth* v. *Keough, supra* at 320 (defendant and victim had had no previous confron-tation); and *Commonwealth* v. *Jones,* 366 Mass. 805, 808 (1975) (no evi-dence of prior trouble between defendant and victim).

[3] Although, as the court implicitly acknowledges, there was substantial evidence that the defendant's conduct was explainable in no other way than that involuntary chemical intoxication caused the defendant to behave in an aberrational manner, I need not rely on this aspect of the case to reach the conclusion that the defendant should have the verdict of guilt reduced to murder in the second degree.

*wealth* v. *King*, 374 Mass. 501, 506-508 (1978); *Commonwealth* v. *Jones*, 366 Mass. 805, 807-809 (1975); *Commonwealth* v. *Kinney*, 361 Mass. 709, 713 (1972); *Commonwealth* v. *Ransom*, 358 Mass. 580, 582-583 (1971)." *Commonwealth* v. *Keough, supra* at 321. As we said in *Commonwealth* v. *Keough*, " '[t]his is a tragic case in which a minor controversy between strangers exploded into the killing of a human being.' " *Id.* at 320.

"[I]n deciding whether to 'shade the verdict,' we are entitled to give weight to the defendant's character. See *Commonwealth* v. *Seit*, 373 Mass. 83, 95 (1977); *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 750 (1975)." *Commonwealth* v. *Tavares, supra* at 159.[4] Garabedian was twenty-one years old and employed at the time of the homicide. He had completed several semesters of college, then had worked fairly steadily for almost two years after returning to live with his parents in Chelmsford. He had no prior criminal record and no prior history of aggression or violence.[5] In short, he "was not a hoodlum or gangster," as the court put it in *Commonwealth* v. *Seit, supra* at 95.

---

[4] See, e.g., *Commonwealth* v. *McDermott*, 393 Mass. 451, 460-461 (1984) (defendant seventeen years old at the time of the incident, academically deficient, with some drug and alcohol problems); *Commonwealth* v. *Tavares, supra* at 146, 158 (defendant seventeen years old, married, and the father of a young child, had completed the tenth grade, and was about to enter the armed forces); *Commonwealth* v. *Seit, supra* (defendant was a "hard worker with no prior criminal record"); *Commonwealth* v. *Mahnke, supra* at 703-704 (defendant had no prior involvement with the law and had not manifested any violent tendencies prior to the evening of the victim's death); *Commonwealth* v. *Vanderpool, supra* at 750-751 (defendant twenty-two years old, married, with two children, and suffering from disabling injuries as a result of his service in the Viet Nam war); *Commonwealth* v. *Jones, supra* at 808 (defendant was twenty-eight years old, married, with six small children, and "gainfully employed").

But see *Commonwealth* v. *Almon*, 387 Mass. 599, 608 (1982), where the court states that, "although the defendant was only twenty-one years old and does not have a criminal record that indicates a tendency to violence, these factors are insufficient to warrant ignoring the Commonwealth's ample evidence or disturbing the jury's verdict." I note, however, that many other factors which this court has considered under § 33E weighed against relief in *Almon*. For example, the defendant in *Almon* carried the weapon; the defendant struck the victim first; and the case did not involve a "senseless brawl." *Commonwealth* v. *Ransom, supra* at 583.

[5] The lack of a prior criminal record frequently weighs in a defendant's favor in our § 33E analysis. See, e.g., *Commonwealth* v. *McDermott, supra*

On the whole record, there is an "irreducible doubt in all the circumstances whether the defendant consciously formed a purpose . . . to do [the victim] mortal injury; but if the defendant did, it is still probable that the resolve lasted for only 'a fleeting period to time,' as we said of the interval of premeditation in *Commonwealth* v. *Williams,* 364 Mass. 145, 152 (1973), where we applied § 33E to reduce a murder verdict to the second degree." *Commonwealth* v. *Cadwell,* 374 Mass. 308, 317 (1978).

I conclude that the "thrust of the evidence," *Commonwealth* v. *Jones, supra* at 808, regarding David Garabedian's encounter with the victim on March 29, 1983, is toward a verdict of murder in the second degree rather than the verdict the jury brought in. We have stated that "[r]egard for the public interest impels us to use with restraint our power under § 33E to modify the jury's verdict. On the other hand it is clear that in all cases our obligations under § 33E require the most serious deliberation." *Commonwealth* v. *Williams, supra* at 151. The crime was abhorrent. Nevertheless, I am persuaded that the defendant's "criminal involvement was not of the nature that judges and juries, in weighing evidence, ordinarily equate with murder in the first degree."[6] *Williams, supra* at 152. We, unlike a

---

at 460-461, *Commonwealth* v. *Dalton,* 385 Mass. 190, 196-197 (1982), *Commonwealth* v. *Tavares, supra* at 158, *Commonwealth* v. *Keough, supra* at 320-321, *Commonwealth* v. *Seit, supra* at 94-95, *Commonwealth* v. *Mahnke, supra* at 703-704, *Commonwealth* v. *Vanderpool, supra* at 750-751, and *Commonwealth* v. *Jones, supra* at 808.

[6] As Justice Quirico stated in *Commonwealth* v. *Gould,* 380 Mass. 672, 688 (1980) (concurring in part and dissenting in part), we are "not concerned here with the technical question whether the evidence was sufficient to support the jury's implied finding . . . . Rather, [we are] concerned with the broader question whether we can reasonably and fairly conclude, upon consideration of the entire evidence of insanity . . . that there is no substantial likelihood of a miscarriage of justice in these circumstances. In such a case it is not enough, nor is it a proper discharge of our responsibility under § 33E, to base our decision solely on the fact that there was some evidence . . . to support the jury's conclusion . . . . If that were the sole test there would be no need or occasion for the exercise of the extraordinary powers vested in this court by § 33E. While those powers are to be exercised

jury, are aware of the differing aspects of punishment flowing from a conviction of murder in the first or the second degree. Also, unlike a jury, we are aware of the broad range of defendants charged or convicted of these crimes. It is our duty under § 33E to see to it that the punishment imposed does not exceed the mandate of justice. This is such a case. This defendant is not a gangster or a hired killer. At worst, he is a young man of misfortune. No just or humane purpose requires that he be imprisoned for life without any prospect of parole. I would therefore order entry of a verdict of guilty of murder in the second degree. Accordingly, I respecfully dissent from the court's refusal to do so.

---

sparingly, they may, and perhaps must, be exercised when all other conventional tests and procedures have been exhausted but we are still left with a miscarriage which may result unless we exercise those powers to prevent it."